74 F.3d 1204
 17 ITRD 2124
 NTN BEARING CORPORATION, American NTN Bearing Manufacturing
Corp. and NTN Corporation, Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
and
The Torrington Company and Federal-Mogul Corporation,
Defendants-Appellees.
 No. 94-1186.
 United States Court of Appeals,
Federal Circuit.
 Dec. 11, 1995.
 
 Donald J. Unger, Barnes, Richardson & Colburn, Chicago, Illinois, argued, for plaintiffs-appellants. With him on the brief were Kazumune V. Kano and Diane A. MacDonald.
 Michael S. Kane, Attorney, Department of Justice, Washington, D.C., argued, for defendant-appellee. Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director and Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, Department of Justice, Washington, D.C., were on the brief, for defendant-appellee. Also on the brief were Stephen J. Powell, Chief Counsel, for Import Admin., Berniece A. Browne, Senior Counsel, and David J. Ross, Attorney-Advisor, Office of the Chief Counsel, for Import Admin., U.S. Dept. of Commerce, Washington, D.C. (Stephen J. Claeys, of counsel).
 Frederick L. Ikenson and Joseph A. Perna, V, of Frederick L. Ikenson, P.C., Washington, D.C., were on the brief, for defendants-appellees, Federal-Mogul Corp. (Larry Hampel, of counsel).
 Terence P. Stewart, James R. Cannon, Jr. and John M. Breen, Stewart & Stewart, Washington, D.C., for defendants-appellees, The Torrington Co.
 Before ARCHER, Chief Judge, RICH, Circuit Judge, NIES, Senior Circuit Judge.*
 NIES, Senior Circuit Judge.
 
 
 1
 NTN Bearing Corporation, American NTN Bearing Manufacturing Corp. and NTN Corporation (collectively "NTN") appeal from the final judgment of the United States Court of International Trade entered December 8, 1993 (No. 91-08-00577). We affirm-in-part, reverse-in-part and remand to the International Trade Administration (ITA) for consideration of the clerical errors alleged by NTN.
 
 I.
 BACKGROUND
 
 2
 Before the Court of International Trade (trial court), NTN challenged the ITA's final results of antidumping duty administrative reviews respecting antifriction bearings. 56 Fed.Reg. 31,754 (1991). NTN contested, inter alia, ITA's failure to correct clerical errors and ITA's calculation of depreciation for idled equipment and loss on disposal of fixed assets.
 
 
 3
 In response to ITA's preliminary determinations, NTN submitted a timely response arguing against some bases for the ITA's determination. NTN also requested ITA to correct two clerical errors made by NTN in its earlier submission that it alleged caused a substantial increase in the dumping margins. First, NTN alleges that it made a clerical error in listing the family code for certain part numbers sold to a United States customer. The code incorrectly showed the parts met high precision bearing tolerances, rather than the standard precision bearing tolerances. The other error involved the listing of four sales to Canadian customers as sales to United States customers, again caused by clerical misreading of a code. The effect of these mistakes was compounded because ITA used a sampling method to determine the extent of dumping, and the sample data contained the clerical errors. NTN submitted documentary and testimonial evidence to establish the fact of error. The trial court rejected NTN's request for a remand for ITA to consider these corrections. Finding that the errors were not obvious from the record and that the deadline for submitting new information had expired at the time NTN made the request (19 C.F.R. Sec. 353.31), the trial court upheld ITA's refusal to correct the alleged clerical mistakes. NTN Bearing Corp. v. United States, 826 F.Supp. 1435, 1439 (Ct. Int'l Trade 1993).
 
 
 4
 The trial court further found that ITA properly included costs associated with depreciation for idled machinery and losses for disposal of fixed assets. Reasoning that the costs were incurred in the ordinary course of business and that "to not include [the cost] would distort the company's financial position," the trial court found that ITA acted reasonably and in accordance with law. Id. at 1442.
 
 
 5
 After remand on grounds not pertinent to this appeal, judgment was entered upholding ITA's review and the parties appealed to this court. See Cabot Corp. v. United States, 788 F.2d 1539, 1542-43 (Fed.Cir.1986) (A final judgment is a prerequisite for appeal.).
 
 II.
 IDLED EQUIPMENT AND LOSS ON DISPOSAL
 
 6
 The ITA determinations challenged on the merits in this appeal must be upheld unless the determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." Tariff Act of 1930, Sec. 516A, 19 U.S.C. Sec. 1516a(b)(1)(B) (1988); Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1189 (Fed.Cir.1990). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed.Cir.1984) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951)). Moreover, under traditional principles of judicial deference to agency interpretation of statutes and regulations which the agency administers, our review questions whether the agency's interpretation is reasonable. Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984); Daewoo Elec. Co. v. International Union, 6 F.3d 1511, 1516 (Fed.Cir.1993).
 
 
 7
 NTN argues that ITA erred by including depreciation expenses and disposal losses in calculating cost of production and constructed value. Japanese Generally Accepted Accounting Principles (GAAP) do not require companies to record such expenses in their books. In contrast, the government argues that it need not adhere to the home country's GAAP when those accounting practices do not recognize actual costs. See IPSCO, Inc. v. United States, 701 F.Supp. 236, 238 n. 3 (Ct. Int'l Trade 1988).
 
 
 8
 The governing statute that allows ITA to construct a value for imported merchandise does not limit ITA to financial records kept pursuant to the home country GAAP. 19 U.S.C. Sec. 1677b(e) (1988). ITA may accept those records, but it also may reject those records if accepting them would distort the company's true costs. See IPSCO, supra. Under the circumstances here, we agree with the trial court that the inclusion of these items in ITA's calculation of home market value is supported by substantial evidence and in accordance with law.
 
 III.
 CLERICAL ERRORS
 
 9
 In rejecting NTN's request to correct clerical errors in NTN's submission and to recalculate dumping duties on the basis of corrected information, ITA stated in its final determination:
 
 
 10
 See Department's Position to Comment 7.[1] In this case, NTN also submitted untimely data, and did not adequately demonstrate from information already on the record that errors had occurred with respect to the sales in question. Therefore, we have not made the corrections requested by NTN for these final results.
 
 
 11
 In its brief, ITA explains that it relied on 19 C.F.R. Sec. 353.31(a)(1)(ii) which provides:
 
 
 12
 (a) Time limits in general. (1) Except as provided in paragraphs (a)(2) and (b) of this section, submissions of factual information for the Secretary's consideration shall be submitted not later than:
 
 
 13
 ....
 
 
 14
 (ii) For the Secretary's final results of an administrative review under Sec. 353.22(c) or (f), the earlier of the date of publication of notice of preliminary results of review or 180 days after the date of publication of notice of initiation of the review; ...
 
 
 15
 Inasmuch as Congress has not specified the procedures ITA must use to obtain information, it is within the discretion of ITA to promulgate appropriate procedural regulations. By the same token, a regulation which is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion. See Tehnoimportexport v. United States, 766 F.Supp. 1169, 1178 (Ct. Int'l Trade 1991) (analyzing price regulation which provided for correction of errors in a party's submission if received in time to permit proper analysis and verification).
 
 
 16
 The ITA further states in its brief to this court, "Commerce generally will correct an error in the original information submitted by a respondent, using untimely submitted new information, if (1) the error is obvious from the administrative record in existence at the time the error is brought to Commerce's attention ... and (2) Commerce is able to determine from the administrative record in existence at the time the error is brought to its attention that the untimely submitted information is correct." (Emphasis added.) That interpretation of the regulatory time requirements was upheld as a reasonable exercise of ITA's discretion under the circumstances set out in NSK Ltd. v. United States, 798 F.Supp. 721, 725 (Ct. Int'l Trade 1992), aff'd, 996 F.2d 1236 (Fed.Cir.1993) (Table). However, the ruling in NSK did not purport to and does not set the limits of ITA's discretion for all cases.
 
 
 17
 In this case, NTN argues that a distinction needs to be drawn between mere clerical errors and errors of a substantive nature made by a party. NTN points out that such a distinction has been made in connection with errors made by the ITA itself. The ITA had taken the position that it could not correct its own ministerial errors in calculations after issuance of a final determination no matter how obvious the errors might be. In its view, an aggrieved party had to take an appeal to obtain any modification of a final determination.[2] Recognizing the unnecessarily cumbersome nature of ITA's position, Congress amended the statute to require ITA to correct its ministerial errors (which includes clerical errors) brought to its attention within a reasonable time after the final determinations are issued. 19 U.S.C. Sec. 1675(f) (1988 & Supp.1993). Thus, NTN makes a persuasive argument that clerical errors of a respondent are different in nature from substantive errors, e.g., errors that result from errors of judgment, and that the information it supplied does not fall within the purview of the cited regulation.
 
 
 18
 In this case, NTN was alerted to the probability of error upon examination of the ITA calculations underlying the ITA's preliminary determination of the amount of duties[3] and determined that an error occurred in the copying of certain codes onto ITA forms. ITA requires foreign companies, like NTN, to submit millions of pieces of information in a format acceptable to ITA. Here, NTN did not merely photocopy its own records and turn them over to ITA. NTN had to input its data onto a computer readable format design of ITA. While making conversion from its own records to ITA's acceptable format, NTN personnel allegedly made typing errors in transcribing the business records. For 23 U.S. sales, one digit in a 13digit code identifying specific types of parts was entered incorrectly into the database from which the U.S. sales tape was prepared. In addition, NTN discovered that it had mistakenly included in its U.S. sales database four sales which were actually sales to a Canadian, not a U.S., customer for goods that never entered the United States. Again, this was due to entry of an improper code number. NTN submitted supporting documentation to establish the clerical nature of these errors and sought to have these entries deleted before the final determination. As previously indicated, ITA refused to consider correction of these errors because of the "untimely" submission of the corrective information. We hold this was an abuse of discretion.
 
 
 19
 ITA states it does not hold respondents to the timely submission rule if it can determine from existing information of record that an error was made. The requirement that the record disclose the error essentially precludes correction of clerical errors made by a respondent. Where clerical personnel of a respondent transpose code numbers, the existing administrative record will not disclose that such error occurred. On its face, the information used in the calculations appears correct. Thus, while it may be a reasonable exercise of ITA's discretion to restrict the correction of its own clerical errors to those obvious from the record, the same rule applied to a respondent's errors becomes arbitrary.
 
 
 20
 It is the duty of ITA to determine dumping margins "as accurately as possible." Rhone Poulenc, 899 F.2d at 1191. As this court has stated, the antidumping laws are remedial not punitive. Chaparral Steel Co. v. United States, 901 F.2d 1097, 1103-1104 (Fed.Cir.1990). The affected U.S. industry is not entitled to a remedy in excess of the difference between foreign market value and U.S. price. It is clearly not entitled to duties on Canadian sales. NTN responded in a timely manner to the preliminary determination, pointing out ITA's clerical errors, as well as its own. ITA corrected its own but not NTN's errors. Correction of NTN errors would neither have required beginning anew nor have delayed making the final determination. A straightforward mathematical adjustment was all that was required. Failure to make it resulted in the imposition of many millions of dollars in duties not justified under the statute.
 
 
 21
 In some instances, a tension may arise between finality and correct result. The Supreme Court has noted: "Whenever a question concerning administrative, or judicial, reconsideration arises, two opposing policies immediately demand recognition: the desirability of finality, on the one hand, and the public interest in reaching what, ultimately, appears to be the right result on the other." Civil Aeronautics Bd. v. Delta Air Lines, Inc., 367 U.S. 316, 321, 81 S.Ct. 1611, 1617, 6 L.Ed.2d 869 (1961) (footnote omitted). However, preliminary determinations are "preliminary" precisely because they are subject to change. Thus, the tension between finality and correctness simply did not exist at the time NTN requested correction. Moreover, even at the time of the first appeal, the court remanded for correction of the final determination. We agree with Brother Industries, Inc. v. United States, 771 F.Supp. 374, 384 (Ct. Int'l Trade 1991), that where a remand is made to correct clerical errors made by the ITA, it would be paradoxical to deny consideration at the same time of similar errors of others.
 
 
 22
 Finally, the agency argues that the information in NTN's submission may not be correct and that it should not be required to consider it for this reason. We disagree. The basis for the refusal to consider was solely on the basis of untimeliness, a ground we hold was not proper in this case. Moreover, ITA's argument is purely speculative. NTN fully cooperated in providing information on the basis of which ITA acted, none of it being verified. In any event, ITA's litigation-driven argument comes too late for serious consideration. We also do not agree that draconian penalties are appropriate for the making of clerical errors in order to insure submission of proper data. Clerical errors are by their nature not errors in judgment but merely inadvertencies. While the parties must exercise care in their submissions, it is unreasonable to require perfection. ITA's refusal to consider NTN's request for correction of clerical errors in this case constituted an abuse of discretion.[4]
 
 IV.
 CONCLUSION
 
 23
 For the foregoing reasons, we reverse the Court of International Trade and remand to the ITA to consider whether the information submitted supports the allegation that clerical errors were made by NTN in submission of data. We affirm all other issues raised on appeal.
 
 
 24
 AFFIRMED-IN-PART, REVERSED-IN-PART and REMANDED TO ITA WITH INSTRUCTIONS.
 
 
 
 *
 Judge Nies assumed Senior status on November 1, 1995
 
 
 [1]
 A fuller explanation on the rejection of untimely data had been given in connection with another respondent
 
 
 [2]
 Contrary to this view, a number of cases have recognized the inherent authority of an agency to correct inadvertent ministerial errors in appropriate circumstances. See Zenith Elecs. Corp. v. United States, 884 F.2d 556, 560 (Fed.Cir.1989), and cases cited therein
 
 
 [3]
 ITA is required to furnish this information to parties if requested, pursuant to 19 C.F.R. Sec. 353.15(g) ("Promptly after making the preliminary determination, the Secretary will provide to parties to the proceeding which request disclosure a further explanation of the calculation methodology used in making the determination.")
 
 
 [4]
 Having concluded that clerical errors need not be obvious from the record to warrant correction, we need not address NTN's further argument that there was sufficient information in the record to confirm the corrections