**ASOCIACION COLOMBIANA de EXPORTADORES de FLORES, et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**Floral Trade Council, Defendant–Intervenor.**

Slip. Op. No. 98–104.
Court No. 96–09–02209.

United States Court of International Trade.

July 20, 1998.

---

Arnold & Porter, (Michael T. Shor), Washington, DC, for Plaintiffs Asocolflores and the Flores del Rio Group.

Frank W. Hunger, Assistant Attorney General of the United States; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Of Counsel, Lucius B. Lau, Office of the Chief Counsel for Import Administration, United States Department of Commerce, Washington, DC, for Defendant.

Karen L. Band, Attorney–Advisor, Office of the Chief Counsel for Import Administration, Department of Commerce, for Defendant. Stewart and Stewart, (Mara Burr, James R. Cannon, Jr., Amy S. Dwyer, Terence P. Stewart), Washington, DC, for Defendant–Intervenor Floral Trade Council.

## MEMORANDUM OPINION & ORDER

POGUE, Judge.

On April 23, 1998, pursuant to U.S. CIT Rule 59(a), Asocolflores, AFIF, individual

Colombian producers of flowers ("Asocolflores"), and the Flores del Rio Group (collectively "Plaintiffs"), filed a motion for reconsideration and/or rehearing of the Court's decision in *Asociacion Colombiana de Exportadores de Flores v. United States*, 22 CIT ——, 6 F.Supp.2d 865(1998)("*Asociacion Colombiana* ").

In *Asociacion Colombiana* the Court concluded *inter alia* that Commerce lawfully used a peso-based interest rate to calculate the imputed credit expenses on U.S. dollar-denominated sales, that Commerce's decision with regard to inflation adjustments was in accordance with law, and that Commerce appropriately applied best information available ("BIA") to Flores del Rio.[1] slip op. 98–33, at 8–22, 34–44.

Plaintiffs now argue that (1) the Court should revisit Commerce's treatment of imputed credit expenses in light of a policy memorandum subsequently issued by the Department; (2) the Court should reconsider its decision regarding inflation adjustments as the Court confused the monetary correction claimed by Plaintiffs with the increase in value stemming from inflation adjustments to fixed assets; and (3) the Court erroneously concluded that Commerce was justified in applying BIA to Flores del Rio for not providing any explanation to support its corrections to reported depreciation expenses. Pls.' Mem. Supp. Mot. Recons. at 2 ("Pls.' Mot.").

## Discussion

■■■ The decision to grant or deny a motion for rehearing lies within the sound discretion of the court. *St. Paul Fire & Marine Ins. Co. v. United States*, 16 CIT 984, 984, 807 F.Supp. 792, 793 (1992), *aff'd*, 16 F.3d 420, 1993 WL 513892 (Fed.Cir.1993); *Sharp Elecs. Corp. v. United States*, 14 CIT 1, 2, 729 F.Supp. 1354, 1355 (1990). The purpose of a rehearing is not to relitigate the case but, rather, to rectify a fundamental or significant flaw in the original proceeding. *Arthur J. Humphreys, Inc. v. United States*, 15 CIT 427, 427, 771 F.Supp. 1239, 1241 (1991), *aff'd* and *adopted*, 973 F.2d 1554 (Fed. Cir.1992). In ruling on a motion for rehearing, a court's previous decision will not be disturbed unless it is "manifestly erroneous." *St. Paul*, 16 CIT at 984, 807 F.Supp. at 793. A rehearing is a method of rectifying a significant flaw in the conduct of the original proceeding. *Id.* at 985 (citing *W.J. Byrnes & Co. v. United States*, 68 Cust. Ct. 358, C.R.D. 72–5, 1972 WL 24207 (1972)).

## 1. Imputed Credit Expenses

■■■ Plaintiffs argue that Commerce has repudiated the approach used in this case to adjust foreign currency borrowing rates to calculate imputed credit for U.S. dollar-based sales.[2] The basis for this claim is a policy bulletin issued by Commerce on February 23, 1998, addressing the appropriate interest rate to be used to impute credit expenses in cases where a respondent has no short-term borrowings in the currency of the transaction being examined.[3] Mem. From Carlo G. Cavagna re: Imputed Credit Expenses and Interest Rates (Feb. 23, 1998)("Imputed Credit

---

1. Familiarity with the Court's earlier decision in this case is presumed.

2. Plaintiffs also argue that the Court should review its assertion that Asocolflores presented "no evidence on the record demonstrating that U.S. dollar-denominated loans were actually available or that Colombian companies could be expected to use such loans." *Asociacion Colombiana*, 6 F.Supp.2d at 878, slip op. 98–33, at 20. The Court issued an errata covering this matter on June 29, 1998.

Nevertheless, Plaintiffs misinterpret the Court's conclusion. The Court did not question the existence of dollar loans through a program of the Colombian export bank, BANCOLDEX. Nor did the Court overlook the fact that Asocolflores provided examples of respondents that had short-term dollar borrowings. In fact, for these respondents, Commerce imputed the U.S. credit expense using the interest rates associated with these dollar-denominated loans. *Id.*, 6 F.Supp.2d at 876, slip op. at 17. The Court simply found that in contrast to *LMI–La Metalli Industriale, S.p.A. v. United States*, 912 F.2d 455, 460 (Fed.Cir.1990), where "LMI provided evidence that it had obtained dollar-denominated loans," Plaintiffs here did not provide evidence that all of the respondents had actually obtained dollar-denominated loans.

3. The Court provided the parties in this case with an initial draft confidential opinion on February 26, 1998. The Court's opinion, *Asociacion Colombiana*, 22 CIT ——, 6 F.Supp.2d 865, (both public and confidential version), was published on March 25, 1998.

Memo"). Plaintiffs maintain that this policy bulletin expressly repudiates Commerce's decision in the instant case to use adjusted peso borrowing rates. Pls.' Mot. at 3–4.

However, this policy bulletin was not in effect at the time of the issuance of the final results.[4] In fact, the bulletin clearly states that Commerce's new practice will apply in "all future cases." Imputed Credit Memo at 5. More importantly, this Court found that the methodology employed by Commerce was in accordance with law.[5] *Asociacion Colombiana*, 6 F.Supp.2d at 876–879, slip op. at 16–22. The fact that Commerce later changed its policy does not detract from the Court's decision.

## 2. Inflation Adjustments

■ Plaintiffs argue that the "Court's decision confused the monetary correction adjustment claimed by plaintiffs with the increase in value stemming from inflation adjustments to fixed assets." Pls.' Mot. at 2. Plaintiffs assert that by the Court's description of the net monetary correction as the "newly stated asset values less increased equity," *Asociacion Colombiana*, 6 F.Supp.2d at 874 n. 9 (citing Asocolflores' Mem. Supp. Mot. J. Agency R. at 13), the Court "misunderstood the net monetary correction, and what it represents...." Pls.' Mot. at 6.

However, as Asocolflores stated:

Applying Colombian inflation accounting, two cost adjustments are made. First, asset values and depreciation are adjusted for inflation. The 1 million peso widget maker now is worth 1,250,000 pesos, and the annual depreciation expense increases to 1,250,000 × 20%, or 250,000 pesos. Second, a monetary correction is made. Calculated on the basis of nonmonetary as-

sets, in this case, the widget maker (1 million pesos × 25%), less equity (200,000 pesos × 25%), this gain of 200,000 pesos (250,000–50,000) is, in effect, an adjustment to the exposed monetary liability (the 800,000 peso outstanding loan × 25%). This monetary correction gain results from the fact that the loan will be repaid in "cheaper" pesos.[6]

Asocolflores' Mem. Supp. Mot. J. Agency R. at 13. Thus, under the adjustment proposed by Asocolflores, Commerce would determine the "newly stated assets" (1 million pesos × 25%) and then deduct "increased equity" (200,000 × 25%). Accordingly, the Court did not err in its summary of Asocolflores' requested adjustment.

Plaintiffs also argue that the Court's initial decision "nowhere provided any reason why the net monetary correction was not allowed as an offset to costs." Pls.' Mot. at 6. Plaintiffs are mistaken.

At the administrative level Asocolflores raised the inflation adjustment issue arguing that Commerce should have reduced production costs by the amount of the "difference between required inflation adjustments to asset values and accumulated depreciation." *Asociacion Colombiana*, 6 F.Supp.2d 865 at 874 n. 9. In the underlying case, Asocolflores shifted its argument maintaining that Commerce should adjust production costs by the amount of the income from the net monetary correction. *Id.* Commerce argued that Asocolflores failed to exhaust its administrative remedies with regard to the newly proposed adjustment. The Court found that Plaintiffs had "sufficiently raised the issue presented, whether Commerce erred in making adjustments for inflation, notwithstanding that Asocolflores has shifted its argument as to

---

**4.** It is well-established that "Commerce has the flexibility to change its position...." *Cultivos Miramonte S.A. v. United States*, 21 CIT ——, ——, 980 F.Supp. 1268, 1274; *see also Hoogovens Staal BV v. United States*, 22 CIT ——, ——, 4 F.Supp.2d 1213, 1217 (Mar. 13, 1998)(noting that Commerce is not required to adhere to its prior reasoning as long as it explains why it has changed its position).

**5.** However, the Court found "that Commerce failed to cite evidence to support the conclusion

that its methodology—adjusting for the devaluation of the peso against the dollar—is well-founded." *Asociacion Colombiana*, 6 F.Supp.2d 865, slip op. 98–33, at 22. Thus, the Court remanded this issue to Commerce for reconsideration.

**6.** Excerpted from an inflation adjustment example presented by Asocolflores assuming 25% annual inflation. *See* Asocolflores' Mem. Supp. Mot J. Agency R. at 12–13.

what type of adjustment should be made." *Id.*

In *Asociacion Colombiana,* Asocolflores argued that in numerous other cases involving identical or equivalent inflation accounting, both this court and Commerce have expressly recognized that the monetary correction must be taken into account in calculating costs of production and constructed value. *Id.* at 875 n. 11. The Court rejected Asocolflores' assertion noting cases where Commerce did not take the monetary correction into account in calculating costs of production. *Id.* at 875-76 (citing *Camargo Correa Metais v. United States,* 17 CIT 897, 899, 1993 WL 366964 (1993)(upholding Commerce's determination that the monetary correction under Brazilian GAAP is an aggregate inflation adjustment restating owner's equity and permanent assets and does not specifically relate to the product, nor to the period of review and thus, it would be distortive to apply the adjustment); *Aimcor, Ala. Silicon v. United States,* 20 CIT ——, ——, slip op. 96–79, at 3, 1996 WL 276955 (May 21, 1996)(upholding Commerce's rejection of the monetary correction under Brazilian GAAP), *aff'd on other grounds,* 141 F.3d 1098 (Fed.Cir. 1998)).[7]

Finally, Asocolflores also argues that Commerce's final results did not specifically address the monetary correction adjustment proposed by Asocolflores. Pls.' Mot. at 6–9. That the Department did not specifically discuss the monetary correction should come as no surprise to Plaintiffs as the Court found in *Asociacion Colombiana* that Asocolflores "shifted its argument as to what type of adjustment should be made," slip op. 98–33, at 14 n. 11, after Commerce had published the final results. Nevertheless, Commerce's reasoning for rejecting Asocolflores' original adjustment also supports the rejection of the proposed net monetary correction adjustment.

In *Asociacion Colombiana,* the Court recognized Commerce's practice to deny adjustments to constructed value that are based on investment activities or company business unrelated to the production of the subject merchandise. *Id.,* 6 F.Supp.2d at 875–876, slip op. at 15. Asocolflores argues the mere fact that respondents are flower growers establishes a link between the monetary correction and flower production. Pls.' Mot. at 7. However, there is no record evidence to support the alleged link between accounting entries for income from the net monetary correction and flower production activities. Thus, the Court properly rejected Asocolflores' proposed monetary correction.

### 3. Application of BIA

 Plaintiffs argue that the Court's decision upholding Commerce's application of BIA based on Flores del Rio's failure to document corrections submitted with a questionnaire response reflects a fundamental misunderstanding of Commerce's practice.[8] Pls.' Mot. at 9.

Section 776(c) of the Tariff Act of 1930, as amended 19 U.S.C. § 1677e(c)(1988), states that Commerce "shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available." Commerce's regulations implement this mandate by authorizing the use of BIA whenever the Department (1) Does not receive a complete, accurate and timely response to Commerce's request for factual information; or (2) Is unable to verify, within the time specified, the accuracy and completeness of the factual information submitted. 19 C.F.R. 353.37(a).

---

7. During the administrative proceeding, counsel for Asocolflores agreed that inflation accounting under Colombian GAAP is the same as Brazilian GAAP. *See* P.R. Doc. No. 1709, at 79 (Def.'s Mem. Opp'n Asocolflores' Mem. Supp. Mot. J. Agency R. Ex. 3).

8. Plaintiffs also argue that the Court based its ruling in *Asociacion Colombiana* upon a statute and regulation concerning verification that by their terms do not apply in this case. Pls.' Mot. at 9. The Court issued an errata covering this matter on June 29, 1998. The provisions at issue did not constitute the primary basis for the Court's decision. *See Asociacion Colombiana,* 6 F.Supp.2d 865, slip op. 98–33, at 36–40; *see also infra* text pp. 1120–1121.

■ Commerce must "fairly request" the data prior to resorting to any secondary information. *See Koyo Seiko Co. v. United States,* 92 F.3d 1162, 1165 (Fed.Cir.1996). Once Commerce has done so, it possesses the "discretion to determine whether a respondent has complied with an information request." *Daido Corp. v. United States,* 19 CIT 853, 861, 893 F.Supp. 43, 49–50 (1995).

In this case, Commerce made a fair request from Flores del Rio because "the supplemental questionnaire clearly requested inflation adjustments to previously reported depreciation expenses." *Asociacion Colombiana,* 6 F.Supp.2d 865, 884, slip op. 98–33, at 36–37. The question is whether Flores del Rio properly responded to that request. In ·*Asociacion Colombiana,* the Court upheld Commerce's finding that Flores del Rio did not properly respond to Commerce's request for information, thereby, affirming Commerce's application of BIA to the company. *Id.,* 6 F.Supp.2d at 884–887.

As in the underlying case, Plaintiffs argue here that under *NTN Bearing Corp. v. United States,* 74 F.3d 1204 (Fed.Cir.1995), Commerce was required to accept Flores del Rio's correction of clerical errors.[9] Pls.' Mot. at 12. *NTN Bearing* is inapposite.

In *NTN Bearing* in response to Commerce's preliminary determinations, NTN submitted a timely response to the Department's questionnaire. NTN also requested that Commerce correct two clerical errors made by the company in its earlier submission that NTN alleged caused a substantial increase in the dumping margins. *NTN Bearing,* 74 F.3d at 1205. "NTN submitted supporting documentation to establish the clerical nature of these errors and sought to have these entries deleted before the final determination." *Id.* at 1208. The Federal Circuit held that Commerce's refusal to consider NTN's request for correction of clerical errors under the circumstances constituted an abuse of discretion. *Id.* at 1208–09.

In this case except for one sentence in Flores del Rio's response which merely stated that the company "was also correcting

some errors" Flores del Rio provided neither an explanation nor any documentation to establish the clerical nature of the changes. *See Asociacion Colombiana,* 6 F.Supp.2d at ———, slip op. 98–33, at 39.

Plaintiffs assert that "[t]he Court here appears to have created a whole new requirement that respondents during the questionnaire phase of an investigation or review must document any and all corrections, even though there is no requirement that they document originally submitted data." Pls.' Mot. at 13. Plaintiffs misinterpret the Court's decision. *See Asociacion Colombiana,* slip op. 98–33, at 38–39. The Court simply found that Flores del Rio had not established the "clerical" nature of the changes made and therefore did not fall under the purview of *NTN Bearing.*

### Conclusion

In accordance with the foregoing opinion, Plaintiffs' motion for rehearing and reconsideration of judgment is denied.

---

9. Plaintiffs also argue that the Court in *Asociacion Colombiana* erroneously cited to the statutory provision relating to Commerce's correcting its own clerical errors. The Court issued an errata covering this matter on June 29, 1998.