**Slip Op. 00-10**

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

Heartland By-Products, Inc.,          **:**

        Plaintiff,         **:**

                        **:**       **Court No.  99-09-00590**

         v.           **:**       **Before: Barzilay, Judge**

                        **:**

United States of America,       **:**

        Defendant,       **:**

         and          **:**

United States Beet Sugar Association,       **:**

      Defendant-Intervenor.       **:**

_____**:**

[Motions for Reconsideration and Amendment denied.]

                            Decided:  February 1, 2000.

Mayer, Brown & Platt (Simeon M. Kriesberg, Kathryn Schaefer, Andrew A. Nicely), and Serko & Simon (David Serko, Daniel J. Gluck) for Plaintiff.

David W. Ogden, Acting Assistant Attorney General; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office; Commercial Litigation Branch, Civil Division, Department of Justice (Aimee Lee); Karen P. Binder, Office of Assistant Chief Counsel, International Trade Litigation, Customs Service, (Yelena Slepak) and Allan Martin, Associate Chief Counsel, Customs Service, (Ellen Daly), of counsel, for Defendant.

Wilmer, Cutler & Pickering (Lewis J. Liman, Robert C. Cassidy, Jr., Deirdre A. McDonnell), for Defendant-Intervenor.

**OPINION**

**BARZILAY, JUDGE:**

## I. INTRODUCTION

This matter is before the Court pursuant to Defendant and Defendant-Intervenor's USCIT R. 59 Motion for Reconsideration. Defendant and Defendant-Intervenor ("Movants") desire the Court to reverse its judgment issued with Slip Opinion 99-110, dated October 19, 1999, familiarity with which is presumed. For the reasons stated herein, the motion is denied and the original judgment is affirmed in all respects.

## II. BACKGROUND

In Slip Op. 99-110, the Court held that the decision of the Customs Service to revoke New York Ruling Letter 810328 was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law. In addition, the Court held that the correct classification of Plaintiff's product was under subheading 1702.90.40 HTSUS. Movants request reconsideration on two grounds: first, that the entire agency record was not before the Court at the time it rendered its decision; and second, that the appropriate remedy was remand to the agency.[1]

---

[1] While the Defendant declined to join Defendant-Intervenor's points regarding the necessity of the complete agency record and its advocacy of remand to the agency, *see Def.'s Mot. for Reh'g, Recons. and/or Amendment of Findings of Fact* at n. 5 ("*Def.'s Br.*"), it supports those arguments by Defendant-Intervenor which raise material points of mistake of law or facts that Defendant-Intervenor claims occurred in the Court's opinion. *See Def.'s Br.* at 4. Alternatively, the Defendant

## III. STANDARD OF REVIEW

It is settled law that the disposition of a motion for reconsideration and/or rehearing lies within the sound discretion of the court. *See Asociacion Colombiana de Exportadores de Flores v. United States*, 19 F. Supp.2d 1116, 1118 (CIT 1998) (and cases cited therein). Furthermore, a rehearing is not granted to allow a losing party to relitigate the case, but rather to address a fundamental or significant flaw in the original proceeding. *See id.* A decision will not be disturbed unless it is manifestly erroneous. *See id.*

## IV. DISCUSSION

A. *There Was No Fundamental or Significant Flaw in the Original Proceeding.*

Movants claim that the expedited nature of the original proceeding deprived them of the ability to place the entire administrative record before the court.[2] Defendant-Intervenor claims that it did not have an opportunity to participate in the scheduling, while the Defendant maintains that portions of the briefing schedule were achieved through duress. On September 22, 1999, the Court held a hearing on the briefing

---

moves for amendment of certain factual findings pursuant to USCIT R. 52.

[2] Defendant-Intervenor also claims that the nature of the administrative proceedings precluded its full participation. The Movants' arguments regarding the inability to place material before the agency are wholly unavailing. Defendant-Intervenor's petition began the revocation proceedings, which were noticed and opened to comments. Defendant's contention, that as a matter of administrative law the proceeding was informal, is irrelevant. *See Def.'s Reply Mem. to Pl.'s Resp. to Def.'s Mot. for Reh'g, Recons. and/or Amendment of Findings of Fact* at 9 ("*Def.'s Reply*"). Defendant-Intervenor had the opportunity to place material before the agency prior to the agency's decision and did so. *See, e.g.,* AR(I) 1, 10; AR(II) 63; AR(V) 1.

schedule proposed by Plaintiff. In part due to the Defendant's late filing,[3] a recess was taken and the parties were directed to consult and attempt to reach an agreement on a briefing schedule. When the hearing reconvened, the parties informed the Court that a mutually satisfactory briefing schedule had been achieved. Defendant-Intervenor's main complaint about the expedited time frame was that it did not have access to the certified administrative record until October 4, 1999 and therefore, could not place the entire administrative record before the court. Yet, the Defendant-Intervenor's opposition brief contained thirty-five annexes, almost all from the administrative record. Defendant placed approximately twenty-one exhibits in its annexes, for a combined total of fifty-six. While neither Defendant nor Defendant-Intervenor placed the entire administrative record before the Court, it is evident that Defendant-Intervenor had access to it and was able to bring to the Court's attention ample portions it believed were most supportive of its case.[4] *See also* discussion, *infra* Part IV.B.

Defendant's claim of duress also fails to persuade the Court that a fundamental or significant flaw existed in the original proceeding. While the Defendant represents that it consented to portions of the briefing schedule out of duress, Defendant's proposed briefing schedule belies this contention,

---

[3] Defendant filed a proposed briefing schedule a few minutes prior to the commencement of the hearing.

[4] Similarly, Defendant-Intervenor claims that the Court notified the parties it would not accept any further written submissions, and therefore placing the entire administrative record before the court would have been unacceptable. First, nine days elapsed between the established time to designate the agency record and the Court's notice to the parties. Second, it is difficult to see how the Defendant-Intervenor thinks the agency record would have been considered an additional written material in this context: "[The Court has] reviewed the written submissions and [is] satisfied that all relevant issues have been briefed adequately by both sides. Therefore, under the terms of the order issued September 24, 1999, no further written material will be accepted." Letter from Court to Counsel of 10/13/99.

notwithstanding the Defendant's claim to the contrary. *See Def.'s Reply* at 6 n.9. Accordingly, although the original proceeding was expedited, Movants have not pointed to a fundamental or significant flaw warranting rehearing.


B.      *Nothing in the Court's Decision Was Manifestly Erroneous.*


Defendant-Intervenor contends that the Court's decision was manifestly erroneous because it did not have the entire agency record before it. On October 4, pursuant to the terms of the scheduling order, the Defendant filed a certified index of the administrative record. Additionally, Defendant filed an annex containing those portions of the record that it believed supported the agency's decision. Defendant-Intervenor also filed an annex with documents from the agency record. Prior to the Defendant and Defendant-Intervenor's filings, Plaintiff submitted an annex containing numerous record documents, which the Court later cross-referenced to the certified index of the agency record.

On the basis of the record placed before it by the parties, the Court was able to decide the case. In essence, this is a case that does not involve a dispute over the facts, but over the law applied to them.[5] As discussed at length in the Court's opinion, Customs turned a blind eye to the controlling legal precedent that an importer has the right to fashion merchandise to obtain the lowest rate of duty. Ignoring that established bedrock of Customs jurisprudence rendered its conclusions arbitrary, capricious, an abuse of discretion and not in accordance with law. The Court is satisfied, based upon its review of the additional portions of the record cited by the parties in this motion, that the record before it when it issued its opinion

---

[5] *See, e.g.,* AR(VI) 122.

contained the essential facts concerning Heartland's sugar syrup. As discussed in the opinion, Customs is required to classify merchandise according to the applicable law. In that regard, Customs does not acting as policymaker but in an adjudicative capacity. Once the Court had the essential facts before it, the remainder of its task was to review the law and to determine whether Customs acted in accordance with it.

Moreover, while Defendant-Intervenor claims that the Administrative Procedure Act ("APA") mandates review of the entire agency record, a review of the statute and caselaw contradicts the Defendant-Intervenor's position.[6] Section 706 of the APA provides that in deciding whether an agency action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, "the court shall review the whole record *or those parts of it cited by a party . . . .*" 5 U.S.C. § 706 (1994) (emphasis added). The reason for this seems rather straightforward. In an adversarial system, where review of a lengthy, multi-volume administrative record is necessitated, the parties that participated in the proceedings before the agency are in a better position than the court to highlight those portions of the record supporting their position. While the APA provides that a court must review the whole record, it allows the court to rely upon the portions of the record designated by the parties to be essential. The present case does not involve a request to supplement the record with material that the agency considered

---

[6] Not a single case that Defendant-Intervenor cites contravenes the principle that a court may rely upon the parts of the record cited by the parties. Rather, the cited cases discuss when supplementing the record with material not designated as part of the record by the agency is appropriate. *See Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548-49 (9th Cir. 1993); *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555-56 (9th Cir. 1989); *Natural Resources Defense Counsel v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975); *Miami Nation of Indians v. Babbitt*, 979 F. Supp. 771, 775-79 (N.D. Ind. 1996); *Lloyd v. Illinois Reg'l Transp. Auth.*, 548 F. Supp. 575, 590 (N.D. Ill. 1982).

but did not designate as part of the record. Thus, it was not error for the Court to render judgment on the basis of the record placed before it by the parties.[7]

Accompanying its motion for reconsideration, Defendant-Intervenor provided three expert declarations about sugar refining operations. Since these were not part of the administrative record they cannot form a basis for upholding the agency's decision.[8] Nor do they persuade the Court in the limited sense for which they may be considered that an error of fact or law was committed. Defendant-Intervenor contends that the Court committed a manifest error of fact by stating that Congress did not intend to exclude all competing sugar products from entry under quotas by citing several sweetening products that enter without being subject to quota. *See Slip Op. 99-110*, at 21. In a misreading of the opinion,[9] Defendant-Intervenor claims the Court found that lactose syrup, unblended glucose syrups,

_____

[7] The Court has reviewed carefully the additional documents Defendant-Intervenor claims render Customs' decision proper. However, none of the record documents cited convince the Court that it committed a manifest error in the original decision. Indeed, Defendant-Intervenor's reliance on an August 5, 1998, electronic mail message from the Customs Service's independent chemist undercuts its position. The chemist noted that "[o]ur position [] is still that the product in issue is a 'sham product' made with the sole intent of circumventing quotas but we truly don't know where we could classify it, other than 1702.90.40." AR(VI) 114 at 2, AR(VI) 159 at 2. The chemist further states that "we support 100% the classification provided by the NIS [national import specialist]. Chemical analyses support classification in heading 1702.90.40." AR(VI) 159 at 1. In an undated faxed document, which seems to be about a year later, the same chemist concludes that classifying Heartland's product in an HTSUS provision subject to quota is correct. AR(VI) 122. As mentioned, *supra*, this document is a legal characterization of the facts.

[8] This point is uncontested. *See Def.-Intervenor's Reply Mem. in Supp. of its Mot. for Recons. of the Ct's J. of Oct. 19, 1999* at 27.

[9] Indeed this point is misstated in the Defendant-Intervenor's brief which reads: "Second the Court found that other *'competing sugar products,'* such as lactose syrup, unblended glucose syrup, unblended fructose syrup and invert molasses, are not subject to the TRQ." *Def.-Intervenor's Mem. in Supp. of Reh'g* at 32 (emphasis added). The opportunistic addition of "competing sugar products" significantly distorts the context and meaning of the sentence.

unblended fructose syrups, invert molasses, chemically pure fructose syrups and certain cane or other molasses were products that compete with sugar. However, the court made no such finding.

In the first sentence of the paragraph at issue, the Court noted that subheadings 1703.10.30 HTSUS and 1703.90.30 HTSUS allow products that compete with sugar to enter without being subject to quantitative restriction.[10] *Slip Op.* at 20. The second sentence of the paragraph refers to the various syrups listed above and merely refers to them as sugar products not subject to TRQs. The third sentence notes that "Congress did not intend to exclude all competing sugar products from entry without quantitative limitations." *Slip Op.* at 21. A careful reading of the portion of the Court's opinion at issue demonstrates that it was the first sentence, and that sentence only, to which this statement applied. The next and final sentence of the paragraph refers to the various syrups by saying that the HTSUS treats sugar products in a fundamentally different way from prior tariff law. *See Slip Op.* at 21. Thus, no error was committed. The court found only that subheadings 1703.10.30 and 1703.90.30 HTSUS are provisions that allow products that compete with sugar to enter without quantitative limitations.[11]

Finally, the Movants argue that the court exceeded its authority by declaring that Plaintiff's sugar syrup was correctly classified under subheading 1702.90.40 HTSUS. Defendant posits that the role of the court is limited to declaring the agency's revocation of NYRL 810328 published at 33 Cust. Bull. No. 35/36 at 41-54 (Sept. 8, 1999), including its attached HQ 961273, to be unlawful and invalid. The Court

---

[10] Defendant-Intervenor does not dispute that these provisions which allow the import of molasses for the commercial extraction of sugar are not subject to quota.

[11] The court provided additional reasons, which are not challenged here, for its determination that a clear legislative intent to exclude the sugar syrup at issue did not exist. *See Slip Op.* at 21-22.

does not agree. Although the statute limits review of the agency decision to the administrative record, *see* 28 U.S.C. § 2640(e) (incorporating 5 U.S.C. § 706), and limits to declaratory the relief which can be granted, *see* 28 U.S.C. § 2643(c)(4), it vests discretion in the court to determine the appropriate relief. *See id.* Under the facts and circumstances of this case, it was appropriate to declare the correct classification of the merchandise at issue as it was Customs' illegal classification decision that was the basis for holding the revocation unlawful and invalid.

### V. CONCLUSION

For the foregoing reasons, the Court concludes that neither a fundamental or a significant flaw occurred in the original proceeding, nor did the court commit a manifest error of law or fact. Accordingly, the Court will enter an order denying the motion for reconsideration and the Defendant's additional and alternative USCIT R. 52 motion to amend.

Dated: _____                                         _____
     New York, NY                                                                   Judith M. Barzilay
                                                 Judge