Bryson, Circuit Judge,
dissenting.
I respectfully dissent. I would uphold the decision of the Court of International Trade as to the issue of the use of brix levels in making home-market sales calculations, and I would therefore affirm the judgment in this case.
Fischer argues that Commerce improperly refused to consider corrected information as to the actual brix levels used for home-market sales. The problem is that Fischer did not proffer the corrected information in a sufficiently clear manner to put Commerce on notice that it needed to correct an error in its calculations.
In the document on which this issue turns — Fischer’s May 8, 2008, case brief— Fischer complained about Commerce’s methodology, but it made a different argument from the one it makes now. In its case brief, Fischer argued that Commerce should have used “standard brix” levels when calculating prices for purposes of determining the dumping margin, not the actual brix levels at which the product is sold. Using the actual brix levels, Fischer argued, would result in a price distortion with respect to sales that Fischer made to its U.S. customer.
Fischer then stated that the “same factor applies to the NFC [not from concentrate] sales in Brazil.” Fischer noted that the “standard NFC brix value for Brazil sales is 11.5,” and added that a “minimum level is normally provided in the specifica *897 tion sheet at the level indicated.” At that point, the ease brief cited an exhibit (Exhibit 3) that referred to a minimum brix level, but the brief provided no further explanation of the significance of that number. Fischer closed that section of its case brief by stating that if the Department chose “to convert the gallons and kilograms [of juice] to pounds/solids, the use of standard brix to convert allows a price neutral conversion from gallons eliminating the price distortion that resulted from the application of actual brix.”
What Fischer did not say in its case brief was that it had misreported the actual brix levels of products sold to its U.S. customer and that it had reported the minimum brix levels instead. Perhaps Commerce could have divined as much from the materials Fischer provided for it. But to do so would have required Commerce to extrapolate from the reference to the minimum brix level in a single product specification found in Exhibit 3 and to look to other exhibits that were submitted in connection with other, unrelated issues raised in Fischer’s ease brief. At a minimum, Fischer did not clearly present to Commerce the fact that it had erroneously reported minimum brix levels rather than actual brix levels. In fact, Fischer did not raise the issue of its misreporting until its Motion for Judgment on the Agency Record before the Court of International Trade. The trial court made that point, noting that “Fischer appears not to have reported the incorrect sales Brix level” to Commerce, and for that reason the court found “no reason to question Commerce’s reliance on the information Fischer supplied during the investigation.”
Fischer relies on NTN Bearing Corp. v. United States, 74 F.3d 1204 (Fed.Cir. 1995), and Timken U.S. Corp. v. United States, 434 F.3d 1345 (Fed.Cir.2006), for the proposition that Commerce must accept corrections to errors identified by the respondent in Commerce’s preliminary determinations. Those cases, however, involved errors that were called to Commerce’s attention during the administrative process. In this case, Fischer failed to draw Commerce’s attention to the perceived error until well after the administrative proceedings had become final. As we have explained, “Commerce is not required to correct a final determination reflecting an error made by a private party when that error is not apparent from Commerce’s final calculations ... or from the final determination itself.” Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd., 334 F.3d 1284, 1292 (Fed.Cir. 2003) (noting that NTN Bearing recognizes “a strong interest in the finality of Commerce’s decisions [and] does not require correction of errors after a final determination”). Here, Fischer raised the issue of its erroneous reporting of brix levels too late for Commerce to address the matter in its final determination. See Timken, 434 F.3d at 1353 (“Commerce is free to correct any type of importer error ... in the context of making an anti-dumping duty determination, provided that the importer seeks correction before Commerce issues its final results and adequately proves the need for the requested corrections.” (emphasis added)).
Because Commerce was not put on adequate notice at any point during the administrative proceedings that Fischer was contending that it had erroneously reported minimum brix levels as actual brix levels, it was not error for the Court of International Trade not to require Commerce to recalculate the antidumping margin based on what Fischer belatedly identified as an error on its part.