NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**REPWIRE LLC, JIN TIONG ELECTRICAL MATERIALS MANUFACTURER PTE. LTD.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES, SOUTHWIRE COMPANY, LLC,**
*Defendants-Appellees*

**ENCORE WIRE CORPORATION**
*Defendant*

---

2023-1933

---

Appeal from the United States Court of International Trade in Nos. 1:22-cv-00016-JCG, 1:22-cv-00023-JCG, Judge Jennifer Choe-Groves.

---

Decided:  August 19, 2025

---

DAVID J. CRAVEN, Craven Trade Law LLC, Chicago, IL, for plaintiffs-appellants.

KELLY GEDDES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee United States.  Also

represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY; SPENCER NEFF, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

SYDNEY H. MINTZER, Mayer Brown, LLP, Washington, DC, for defendant-appellee Southwire Company, LLC.

_____

Before LOURIE, REYNA, and CHEN, *Circuit Judges.*

REYNA, *Circuit Judge.*

Appellants Repwire LLC and Jin Tiong Electrical Materials Manufacturer PTE. Ltd. appeal the judgment of the U.S. Court of International Trade sustaining determinations reached by the U.S. Department of Commerce in an annual administrative review of an antidumping duty order covering U.S. imports of certain aluminum wire and cable from the People's Republic of China. The principal issue Appellants raise involves Commerce's use of various procedures and agency practices in antidumping duty matters involving non-market economies, such as China. We affirm the Trade Court's judgment.

BACKGROUND

Plaintiff-Appellant Repwire LLC ("Repwire") is a U.S. importer of aluminum wire and cable from the People's Republic of China. The wire and cable that Repwire imports are subject to an outstanding antidumping duty order. *See Aluminum Wire and Cable from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 70,496 (Dep't of Commerce Dec. 23, 2019) ("Antidumping Duty Order"). Plaintiff-Appellant Jin Tiong Electrical Materials Manufacturer PTE. Ltd. ("Jin Tiong") is a foreign exporter that supplies the wire and cable imported by Repwire.

On December 31, 2020, Repwire requested that Commerce conduct an administrative review of the Antidumping Duty Order. Commerce published a notice of initiation on February 4, 2021, naming two companies as respondents subject to the review, Jin Tiong and another company.[1] *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 8,166 (Dep't of Commerce Feb. 4, 2021) ("Notice of Initiation"), at J.A. 92–102. The Notice of Initiation informed the respondents that, in order to obtain a separate, individual antidumping duty rate, they must file a separate rate application ("SRA") or certification within 30 days from the date of publication of the Notice of Initiation. The Notice of Initiation further provided that "[f]or exporters and producers who submit [an SRA] or Certification and subsequently are selected as mandatory respondents, these exporters and producers will no longer be eligible for separate rate status unless they respond to all parts of the [antidumping] questionnaire as mandatory respondents." Jin Tiong was required to submit an SRA, as opposed to a certification, because it did not currently have a separate rate in the proceeding.[2]

---

[1]    The other company is not a party to this appeal.

[2]    The Notice of Initiation explains that "[e]ntities that currently do not have a separate rate from a completed segment of the proceeding should timely file [an SRA] to demonstrate eligibility for a separate rate in this proceeding." Notice of Initiation, at J.A. 93. "Such entities include entities that have not participated in the proceeding, entities that were preliminarily granted a separate rate in any currently incomplete segment of the proceeding (*e.g.,* an ongoing administrative review, new shipper review, *etc.*) and entities that lost their separate rate in the most recently completed segment of the proceeding in which they participated." *Id.* at J.A. 93 n.3.

The SRA was due on March 16, 2021. Jin Tiong did not file an SRA before the March 16, 2021, deadline.

On July 15, 2021, Commerce issued Jin Tiong a non-market economy ("NME") antidumping questionnaire. Two weeks later, Commerce informed Jin Tiong that it had mistakenly issued the questionnaire and that it was rescinding the questionnaire. Commerce explained that it rescinded the questionnaire because Jin Tiong had "failed to establish its eligibility for a separate rate" in the administrative review when it failed to submit a timely SRA. Jin Tiong objected to the rescission of the questionnaire.

On August 5, 2021, Jin Tiong submitted a response to Section A of the questionnaire. Section A is directed toward gathering general corporate information used to assess whether a respondent in an NME operates independent of government control. Because Jin Tiong submitted a Section A response after Commerce had rescinded the questionnaire, Commerce rejected the submission as unsolicited. Subsequently, in the Final Results, Commerce assigned Jin Tiong the country-wide antidumping duty rate of 52.79% *ad valorem*, which was the rate established in the final affirmative determination in the underlying antidumping duty investigation. *Aluminum Wire and Cable from the People's Republic of China*: *Final Results of Antidumping Duty Administrative Review*, 86 Fed. Reg. 73,251 (Dep't of Commerce Dec. 27, 2021) ("Final Results"), at J.A. 334–35.

Repwire and Jin Tiong appealed Commerce's Final Results to the U.S. Court of International Trade ("Trade Court"), asserting that the withdrawal of the questionnaire and subsequent assignment of the China-wide entity rate was arbitrary and capricious, an abuse of discretion, and unsupported by substantial evidence. The Trade Court sustained Commerce's Final Results, finding that Commerce's determinations were reasonable and supported by

substantial evidence.  *Repwire LLC v. United States*, 628 F. Supp. 3d 1288, 1294 (Ct. Int'l Trade 2023).

Repwire and Jin Tiong timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

### STANDARD OF REVIEW

We review decisions of the Trade Court de novo, stepping into the Trade Court's shoes and applying the same standard of review that it applies in reviews of Commerce's final antidumping duty determinations.  *JTEKT Corp. v. United States*, 642 F.3d 1378, 1381 (Fed. Cir. 2011).  We will uphold Commerce's determinations if they are supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence means relevant evidence that a reasonable mind may accept as adequate to support a conclusion.  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

### DISCUSSION

Appellants' appeal primarily focuses on a single issue: Whether Commerce erred in withdrawing the questionnaire, rejecting the Section A questionnaire response, and issuing Jin Tiong a country-wide antidumping duty rate. Appellants' Br. 4.  We conclude Commerce's actions were reasonable and supported by substantial evidence.

### I.

The disputed administrative review conducted by Commerce is an NME antidumping duty proceeding.[3]  In an

---

[3]    The Tariff Act defines an NME country as "any foreign country that the administering authority determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise."  19 U.S.C.

NME antidumping proceeding, Commerce "presumes that all companies within the country are subject to governmental control and should be assigned a single antidumping duty rate unless an exporter demonstrates the absence of both *de jure* and *de facto* governmental control over its export activities. If an exporter demonstrates this independence in its export activities, it is eligible for a rate that is separate from the NME-wide rate. This separate rate is usually an individually calculated rate or a weighted-average of the rates of the investigated companies, excluding any rates that were zero, *de minimis*, or based entirely on facts available." *Separate-Rates Practice in Antidumping Proceedings Involving Non-Market Economy Countries*, 69 Fed. Reg. 77,722 (Int. Trade Admin. Dec. 28, 2004) (citation omitted). Both the NME presumption and the requirement for demonstrating sufficient independence from government control are expressly stated in the Notice of Initiation. The Notice of Initiation further specifies that entities "that wish to qualify for separate rate status in the administrative reviews involving NME countries *must* complete, as appropriate, either a separate rate application or certification[.]" Notice of Initiation, at J.A. 93 (emphasis added).

There is no dispute that Jin Tiong did not file an SRA before the due date. This court has held that if an exporter in an NME country "fails to rebut the presumption of government control, Commerce may permissibly apply the country-wide NME entity rate." *See China Mfrs. All., LLC v. United States*, 1 F.4th 1028, 1040 (Fed. Cir. 2021) (citing *Diamond Sawblades Mfrs. Coal. v. United States*, 866 F.3d 1304 (Fed. Cir. 2017)). Because Jin Tiong failed to file an SRA, Commerce was within its discretion to determine Jin Tiong failed to rebut the presumption of government

§ 1677(18)(A). For purposes of this review, China was deemed an NME country.

control.    Accordingly, Commerce's assignment of the
China-wide rate to Jin Tiong, despite that only two re-
spondents were under review, was reasonable and sup-
ported by substantial evidence.[4]

## II.

Jin Tiong argues that Commerce erred when it with-
drew the Section A questionnaire.  Appellants' Br. 4, 20.
We disagree.  It is well established that Commerce has
broad discretion to set and enforce its regulatory proce-
dures and deadlines.  *See, e.g.*, *Dongtai Peak Honey Indus-
try Co. v. United States*, 777 F.3d 1343, 1351 (Fed.
Cir. 2015); *see also NTN Bearing Corp. v. United States*,
74 F.3d 1204, 1207 (Fed. Cir. 1995).  Section 351.301 per-
mits Commerce to reject untimely or unsolicited question-
naire responses, 19 C.F.R. § 351.301(c)(1), and
Section 351.302 confirms that such responses will not be
"consider[ed] or retain[ed] in the official record of the pro-
ceeding," 19 C.F.R. § 351.302(d).  Here, again, it is undis-
puted that Commerce rescinded the questionnaire because
Jin Tiong did not file an SRA, and that Jin Tiong submitted
its response after Commerce withdrew the questionnaire.
Jin Tiong's response was therefore unsolicited, and Com-
merce had the discretion to withdraw the questionnaire

---

[4] It is well established that, in these circumstances,
the country-wide entity rate may nonetheless constitute an
"individual weighted average dumping margin" under
§ 1677f-1(c), which sets forth the rules for determining
dumping margins in various proceedings, including an ad-
ministrative review.  *Jilin Forest Indus. Jinqiao Flooring
Grp. Co. v. United States*, No. 2023-2245,
2025 WL 2100233, at *3–5, *5 n.5 (Fed. Cir. July 28, 2025)
(explaining the history of this principle as set forth in
*Sigma Corp. v. United States*, 117 F.3d 1401 (Fed. Cir.
1997), and *China Mfrs.*, 1 F.4th 1028).

based on Jin Tiong's failure to comply with its procedural requirement of filing a timely SRA.

Appellants cite *Cast Iron Soil Pipe* to support their argument that Commerce acted arbitrarily in this case. Appellants' Br. 16–18 (citing *Cast Iron Soil Pipe from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value and Postponement of Final Determination*, 83 Fed. Reg. 44,567 (Dep't of Commerce Aug. 31, 2018) ("*Cast Iron Soil Pipe*")). In *Cast Iron Soil Pipe*, Commerce issued a questionnaire and eventually applied an individual company-specific dumping rate to an entity, HengTong Casting, despite the entity not filing an SRA. *See Decision Memorandum for the Preliminary Determination in the Less-Than-Fair-Value Investigation of Cast Iron Soil Pipe from the People's Republic of China* (Dep't of Commerce Aug. 24, 2018) ("*Cast Iron Decision Memorandum*").[5] The parties do not dispute this fact. Appellants' Br. 16–17; *see also* Government Br. 17–18. Commerce's actions, however, were made under the mistaken belief that the entity *had* submitted an SRA. *See Cast Iron Decision Memorandum*, at 8 (Commerce mistakenly noting that it had "received SRAs from 14 entities, inclusive of the mandatory respondent[] HengTong[.]"). This is not the case in this appeal.

In the Final Results, Commerce cites multiple cases where it has consistently enforced its rule that failing to submit a timely SRA will result in Commerce assigning the country-wide entity rate. *See Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review: Aluminum Wire and Cable from the People's Republic of China* (Dep't of Commerce Dec. 20, 2021), at J.A. 327–33 (citing *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into*

---

[5] Available at https://access.trade.gov/Resources/frn/summary/prc/2018-18968-1.pdf.

*Modules, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments*, 80 Fed. Reg. 40,998 (Dep't of Commerce Jul. 14, 2015), and *Hydrofluorocarbon Blends From the People's Republic of China: Final Results of the Antidumping Duty Administrative Review*, 86 Fed. Reg. 49,516 (Dep't of Commerce Sep. 3, 2021)). In any event, we disagree that a single, erroneous, and inconsistent action undermines the reasonableness of Commerce's requirement for an SRA. *Shandong Huarong Mach. Co. v. United States*, 435 F. Supp. 2d 1261, 1282 n.23 (Ct. Int'l Trade 2006) ("[T]wo prior determinations are not enough to constitute an agency practice that is binding on Commerce.").

Accordingly, Commerce's decision to withdraw the questionnaire, refusal to consider Jin Tiong's unsolicited response, and determination to assign Jin Tiong the country-wide rate were reasonable and supported by substantial evidence.

## CONCLUSION

We have considered Appellants' remaining arguments and find them unpersuasive. For the reasons provided, we affirm the Trade Court's judgment sustaining Commerce's Final Results.

## **AFFIRMED**

### COSTS

Costs against Appellants.