**Slip Op. 02 - 52**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  GREGORY W. CARMAN, CHIEF JUDGE**

| | |
|---|---|
| **VIRAJ GROUP, LTD.** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES OF AMERICA,** | **Court No. 00-06-00291** |
| **Defendant,** | |
| **and** | |
| **CARPENTER TECHNOLOGY, CORP., et al.,** | |
| **Defendant-Intervenors.** | |

[Department of Commerce's Remand Redetermination, *Viraj Group, Ltd. v. United States*, Court No. 00-06-00291, Slip Op. 02-24 (February 26, 2002) is remanded to the Department of Commerce for reconsideration.]

*Ablondi, Foster, Sobin & Davidow* (*Peter Koenig*), Washington, D.C., for Plaintiff.

*Robert D. McCallum, Jr.*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; *Lucius B. Lau*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; *David W. Richardson*, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Counsel, for Defendant.

*Collier Shannon Scott, PLLC* (*Robin H. Gilbert, Laurence J. Lasoff*), Washington, D.C., for Defendant-Intervenors.

Dated: June 4, 2002

OPINION

**CARMAN, Chief Judge:**  Pursuant to 28 U.S.C. § 1581(c) (2000), this Court has jurisdiction to review the Department of Commerce's approach to the Indian rupee's devaluation in Final Results of Redetermination Pursuant to Court Remand, *Viraj Group, Ltd. v. United States of America and Carpenter Technology, Corp., et al.*, Slip Op. 02-24 (CIT February 26, 2002) (*Remand Redetermination II*). This Court will sustain *Remand Redetermination II* unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

BACKGROUND

On February 26, 2002, this Court remanded to the Department of Commerce (Commerce) the Final Results of Redetermination Pursuant to Court Remand, *Viraj Group, Ltd. v. United States of America and Carpenter Technology, Corp., et al.*, Slip Op. 01-104 (CIT August 15, 2001).  The Court ordered Commerce:  (1) to consider how to apply a currency conversion methodology that best reaches an accurate dumping margin in this case; (2) if necessary, to recalculate the Plaintiff's dumping margin using a methodology that furthers the congressional goal of accuracy in dumping determinations; (3) to explain if different currency exchange rates were used in the dumping margin calculations, if the use of different rates was appropriate, and if not appropriate, to make any necessary corrective calculations; and (4) to explain the significance of the Plaintiff's pricing decisions to Commerce's determinations of whether the change in rupee valuation in this case constituted a fluctuation to be ignored.  On April 12, 2002, Commerce filed *Remand Redetermination II* with this Court.

**ANALYSIS**

This Court first ordered Commerce to consider how to apply a currency conversion methodology that best reaches an accurate dumping margin in this case. In response, Commerce explained that the currency conversion methodology originally applied is "the best for calculating a fair and accurate dumping margin." *Remand Redetermination II* at 3.

Commerce's explanation is based upon the principle that potential price discrimination occurs on the date of sale (DOS) to the United States because on that date the producer decides and fixes the quantity and price of the merchandise. *Id*. The date of sale is the "date at which [the producer] assesses its costs and makes its competitive, economic decision to complete the sale." *Id*. at 5. Because dumping occurs on the date of sale, "Viraj's subsequent currency gains and losses on the sale following this date . . . are simply immaterial to the Department's calculation of dumping margins." *Id*. at 5-6. Subsequent currency gains and losses would only be relevant if Viraj had factored them into its date of sale pricing decisions. *Id*. at 4. Absent evidence of "forward-thinking" pricing, Commerce simply uses the exchange rate contemplated by the seller on the date of sale in order to compare pricing practices between markets. *Id*. at 3-4.

Although Commerce's currency conversion methodology is likely the best for calculating a fair and accurate dumping margin in many cases, Commerce has not persuaded the Court that its methodology best reaches an accurate dumping margin in *this* case. Despite labeling subsequent currency gains and losses as "immaterial" to its dumping margin determination, Commerce has in the past recognized their potential to distort dumping margin calculations. In *Policy Bulletin 96-1*, Commerce stated, "We are continuing to examine the application of the [exchange rate] model in situations where the foreign currency depreciates substantially against

the dollar over the period of investigation or the period of review.  In those situations, it may be appropriate to rely on daily rates." *Notice: Change in Policy Regarding Currency Conversions,* 61 Fed. Reg. 9,434, 9,435 n.2 (Mar. 8, 1996) (*Policy Bulletin 96-1*).  Commerce also stated that "in both investigations and reviews, whenever the decline in the value of a foreign currency is so precipitous and large as to reasonably preclude the possibility that it is only fluctuating, the lower actual daily rates will be employed from the time of the large decline." *Id*. at 9,436.

Commerce later developed the definition of "precipitous and large" in cases such as *Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Sheet and Strip in Coils From the Republic of Korea*, 64 Fed. Reg. 30,664 (June 8, 1999) (*Stainless Steel from Korea*), where the won declined 40 percent over two months, and *Certain Welded Carbon Steel Pipes and Tubes From Thailand: Final Results of Antidumping Duty Administrative Review*, 64 Fed. Reg. 56,759, 56,763 (Oct. 21, 1999) (*Pipes and Tubes from Thailand*), in which the baht dropped 18 percent in one day.  In those cases, Commerce resorted to the use of daily exchange rates for currency conversion purposes for home market sales matched to U.S. sales.  However, even where Commerce has not considered a currency devaluation to be "precipitous and large," Commerce has addressed a devaluation's distorting effect upon dumping margin calculations. For example, in *Notice of Final Determination of Sales at Less Than Fair Value: Extruded Rubber Thread from Indonesia*, 64 Fed. Reg. 14,690, 14,693 (Mar. 26, 1999) (*Rubber Thread from Indonesia*), the rupiah decreased in value by more than 50 percent over five months. Commerce considered the decline "steady" and "significant." *Id*.  Consequently, Commerce used two price averaging periods to determine whether sales at less than fair value existed because "using a single averaging period would result in a distortion of the dumping calculation." *Id*.

Commerce states that "the facts and circumstances on the record in the instant review do not motivate any general consideration of the issue of depreciating currencies, as the Court invites Commerce to do." *Remand Redetermination II* at 5.  Had the rupee's devaluation been as rapid and large as the currency devaluations in *Stainless Steel from Korea* and *Pipes and Tubes from Thailand*, Commerce posits that Viraj would have been one among many market participants revising their expectations based upon the most current exchange rate data available. *Remand Redetermination I* at 3-4.  In such a case, Commerce's dumping margin calculations would reflect the changed pricing decisions.  *Id*. at 4.  However, because Viraj as an individual market participant provided no evidence of changed pricing as a result of the rupee's gradual devaluation, Commerce asserts it need not consider whether the devaluation distorted its calculations.  *Id*. at 4-5; *see also Remand Redetermination II* at 4-5.

Despite Commerce's assertion to the contrary, this Court finds the facts and circumstances on the record in the instant review do indicate a need to consider the issue of depreciating currencies in order to reach a fair and accurate dumping margin determination. Commerce stated there were "no extraordinary aspects to the observed movement in the rupee between November 3, 1997 and November 30, 1998," but it also recognized that the 14.6 percent depreciation of the rupee was not small. *Remand Redetermination I* at 4-5.  Furthermore, Commerce has acknowledged that, were it to account for the depreciation in its calculations, the dumping margin would be lower.  *Id*. at 5.  The depreciation therefore appears to be substantial if not precipitous.  This Court would find helpful an examination by Commerce of whether a "substantial" devaluation merits the same treatment given "precipitous and large" devaluations. *Policy Bulletin 96-1* appears to consider two separate scenarios rather than merely the one presented by Commerce in this case.

The steep and precipitous currency declines in *Stainless Steel from Korea* and *Pipes and Tubes from Thailand* may have had a clear effect upon pricing decisions in those cases, but "the rupee's downward movement, while small and gradual, appears cumulatively to have had more than a *de minimis* effect upon Commerce's dumping margin calculations." *Viraj Group, Ltd. v. United States*, 193 F. Supp. 2d 1331, 1338 (Ct. Int'l Trade 2002). Viraj's apparent decision not to hedge against currency valuation changes does not necessarily reflect a decision to sell below value. The application of Commerce's standard currency conversion methodology in this case is unreasonable where "a more accurate methodology is available and has been used in similar cases." *Thai Pineapple Canning Ind. Corp. v. United States*, 273 F.3d 1077, 1085 (Fed. Cir. 2001). The case before this Court is no different in principle from *Stainless Steel from Korea, Pipes and Tubes from Thailand*, and *Rubber Thread from Indonesia*. This Court therefore remands once more to Commerce to apply a more accurate currency conversion methodology to its dumping margin calculations in this case.

This Court also ordered Commerce to explain if different currency exchange rates were used in the dumping margin calculations, if the use of different rates was appropriate, and if not appropriate, to make any necessary corrective calculations. Commerce stated that "no currency conversion is done by the Department" because the Department compares cost data reported in the home market currency with home market sales in the home market currency. *Remand Redetermination II* at 5. However, in the absence of a suitable comparison sale in the comparison market, Commerce uses cost data to reach a constructed value. In such a situation, "[t]he appropriate exchange rate is employed to convert the constructed value and compare it to the U.S. sale just as we would convert a comparison market price." *Id*. Currency conversion does appear, therefore, to be "done by the Department." However, although Commerce

consistently uses the DOS exchange rate throughout the review, such an exchange rate does not appear to facilitate an accurate comparison in this case.

Finally, this Court ordered Commerce to explain the significance of the Plaintiff's pricing decisions to its determinations of whether the change in rupee valuation in this case constituted a fluctuation to be ignored.  The Court is satisfied with Commerce's explanation of the importance of Plaintiff's pricing decisions upon dumping margin determinations.  However, it is not satisfied that Commerce has explained the importance of a producer's pricing decisions upon whether the change in currency valuation constitutes a fluctuation to be ignored.  The significance of a producer's pricing decisions is particularly unclear in this case where a steady, gradual, but significant devaluation may have affected the normal value of the subject merchandise after the producer set the export price.

CONCLUSION

The Court does not find *Remand Redetermination II* to be supported by substantial evidence on the record, or otherwise in accordance with law.  This Court therefore remands once again to Commerce to (1) apply a currency conversion methodology that reaches a more accurate dumping margin in this case by accounting for the rupee's depreciation in Commerce's dumping margin calculations; (2) explain to this Court why such a methodology does or does not further the congressional goal of accuracy in dumping determinations; and (3) explain to this Court which method it chooses to apply in this case, apply that method, and give an explanation of its reasons for doing so.

Commerce is directed to file its redetermination with the Clerk of this Court no later than the close of business on Wednesday, June 19, 2002; any responses by Plaintiffs must be filed with the Clerk of this Court no later than the close of business on Wednesday, June 26, 2002;

any rebuttal comments by Defendant and Defendant-Intervenors must be filed with the Clerk of

this Court no later than the close of business on Wednesday, July 3, 2002.

_____

Gregory W. Carman
Chief Judge

Dated: June 4, 2002
       New York, New York