**Slip Op. 02 - 89**

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  GREGORY W. CARMAN, CHIEF JUDGE

| | |
|---|---|
| **VIRAJ GROUP, LTD.** | |
| **Plaintiff,** | |
| **v.** | **Court No. 00-06-00291** |
| **UNITED STATES OF AMERICA,** | |
| **Defendant,** | |
| **and** | |
| **CARPENTER TECHNOLOGY, CORP., et al.,** | |
| **Defendant-Intervenors.** | |

*Ablondi, Foster, Sobin & Davidow* (*Peter Koenig*), Washington, D.C., for Plaintiff.

*Robert D. McCallum, Jr.*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; *Lucius B. Lau*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; *David W. Richardson*, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Counsel, for Defendant.

*Collier Shannon Scott, PLLC* (*Robin H. Gilbert, Laurence J. Lasoff*), Washington, D.C., for Defendant-Intervenors.

Dated: August 15, 2002

**OPINION**

**CARMAN, Chief Judge:**  Pursuant to 28 U.S.C. § 1581(c) (2000), this Court has jurisdiction to review the Department of Commerce's approach to the Indian rupee's devaluation in Final Results of Redetermination Pursuant to Court Remand, *Viraj Group, Ltd. v. United States of America and Carpenter Technology, Corp., et al.*, Slip Op. 02-52 (CIT June 4, 2002) ("*Remand Redetermination III*"). This Court will sustain *Remand Redetermination III* unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

**BACKGROUND**

On June 4, 2002, this Court remanded to the Department of Commerce (Commerce) the Final Results of Redetermination Pursuant to Court Remand,  *Viraj Group, Ltd. v. United States of America and Carpenter Technology, Corp., et al.*, Slip Op. 02-24 (CIT February 26, 2002) ("*Remand Redetermination II*").  This Court ordered Commerce to: "(1) apply a currency conversion methodology that reaches a more accurate dumping margin in this case by accounting for the rupee's depreciation in Commerce's dumping margin calculations; (2) explain to this Court why such a methodology does or does not further the congressional goal of accuracy in dumping determinations; and (3) explain to this Court which method it chooses to apply in this case, apply that method, and give an explanation of its reasons for doing so."  *Viraj Group, Ltd. v. United States*, 206 F. Supp. 2d 1340, 1344 (Ct. Int'l Trade 2002).  On July 22, 2002, Commerce filed *Remand Redetermination III* with this Court.

In *Remand Redetermination III*, Commerce stated that this Court's instruction "implies

that the Department must apply the exchange rate on a date that eliminates the impact of unpredicted currency fluctuations in the case where the amplitude appears to be neither negligible nor extreme." *Remand Redetermination III* at 4. Commerce therefore "adjusted its currency exchange methodology by using the exchange rate on the date of payment rather than the exchange rate on the date of sale." *Id*. In response to this Court's second instruction, Commerce explained that "the adjustment to the currency conversion methodology does not further the congressional goal of calculating an accurate dumping margin" because it does not use the exchange rate considered by the seller in making its pricing decision. *Id*. Finally, Commerce responded to this Court's third instruction by explaining that it had chosen to apply the exchange rate in effect on the date of payment in order to "obviate[] the Court's concern surrounding currency fluctuations between the date of sale and the date of payment and remove[] the Court's perceived distortion from the dumping margin calculation." *Id*. Accordingly, Commerce arrived at an amended dumping margin of zero percent for Viraj Group, Ltd.

**ANALYSIS**

In its remand results, Commerce appears unwilling to acknowledge the inaccuracy that may result when a currency devalues significantly over the course of an investigation or review and a respondent has not hedged against such a change. Commerce also appears unwilling to adequately explain why a steady, gradual, and significant devaluation should not be accorded similar consideration as that given a precipitous and large one. Clearly, however, it recognized such a problem in *Notice: Change in Policy Regarding Currency Conversions,* 61 Fed. Reg. 9,434, 9,435 n.2 (Mar. 8, 1996) ("*Policy Bulletin 96-1*").

This Court must insist that Commerce adhere to the congressional intent of ensuring "that

the process of currency conversion does not distort dumping margins." Uruguay Round

Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, at 841 (1994).

Commerce has a duty to determine dumping margins as accurately as possible. *See, e.g., NTN*

*Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995); *Allied Tube & Conduit*

*Corp.*, 127 F. Supp. 2d 207, 218 (Ct. Int'l Trade 2000). A zero percent dumping margin that

accounts for the effects of a steady, gradual, and significant currency devaluation is more

accurate than one that ignores its effects. Therefore, this Court concurs and sustains the results

of *Remand Redetermination III* while not endorsing the reasoning underlying the recalculation of

the remand results.

CONCLUSION

Upon consideration of *Remand Redetermination III*, the record, and all other pertinent

papers, the results of *Remand Redetermination III* are affirmed in their entirety.

_____
Gregory W. Carman, Chief Judge

August 15, 2002
New York, New York