**VIRAJ GROUP, LTD., Plaintiff,**

v.

**UNITED STATES, Defendant–Appellant,**

and

**Carpenter Technology Corporation, Empire Specialty Steel, Inc., and The United Steel Workers of America, AFL–CIO/CLC, Defendants.**

No. 03–1061.

United States Court of Appeals, Federal Circuit.

Sept. 9, 2003.

Michael D. Panzera, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellant. On the brief were David M. Cohen, Director; and Lucius B. Lau, Assistant Director. Of counsel on the brief were John D. McInerney, Chief Counsel for Import Administration; Berniece A. Brown, Senior Counsel; and David W. Richardson, Senior Attorney, Department of Commerce, of Washington, DC. Of counsel was Christine Sohar, Attorney, Department of Commerce.

Before LOURIE, SCHALL, and LINN, Circuit Judges.

LOURIE, Circuit Judge.

The United States appeals from the decision of the United States Court of International Trade affirming the Department of Commerce's third remand redetermination of a dumping margin. *Viraj Group, Ltd. v. United States,* 217 F.Supp.2d 1359 (Ct. Int'l Trade 2002) ("*Viraj IV*"). Because we conclude that the court failed to give priority to an express statutory provision, we reverse.

## BACKGROUND

Viraj manufactures stainless steel wire rod in India and imports the same into the United States. The United States Department of Commerce initiated an antidumping investigation. It concluded that Viraj was dumping that merchandise onto the United States market at a margin of 11.88%, and that an antidumping duty rate of the same percentage should be applied to Viraj's imports. *Viraj Group, Ltd. v. United States,* 162 F.Supp.2d 656, 658 (Ct. Int'l Trade 2001) ("*Viraj I*"). Commerce calculated that dumping margin based upon the rupee-dollar exchange rate on November 3, 1997, the date of a Viraj purchase order, which Commerce determined established the date of sale. *Id.* at 660.

Viraj appealed to the Court of International Trade, asserting, *inter alia,* that Commerce inaccurately computed the dumping margin for its imports by failing to take account of fluctuations in the rupee-dollar exchange rate. *Id.* at 661.

More specifically, Viraj contended that, because the rupee had devalued over 10% in relation to the dollar over the period of the investigation after November 3, 1997, Commerce's selection of an earlier exchange rate distorted the dumping margin. *Id.* According to Viraj, Commerce's computation was entirely due to its erroneous choice of an exchange rate. *Id.*

The court was not satisfied with Commerce's choice of an exchange rate date. While "not disput[ing] that Commerce adhered to its regulatory and statutory obligations to utilize the exchange rate in effect on the date of sale," *id.*, the court stated that "[m]ere compliance with regulations cannot trump what appears to be an absurd result," *id.* at 662. The court held that "Commerce is under a duty to determine dumping rates as accurately as possible" and, according to the court, it was not clear whether Commerce had done so. *Id.* at 662–63. Accordingly, the court held that Commerce's failure to justify its choice of an exchange rate was contrary to law, and it remanded for Commerce to provide either a justification for its choice or a recalculation of the dumping margin. *Id.* at 663–64.

On remand, Commerce explained its reasons for believing that its choice of exchange rates, besides being statutorily required, resulted in an accurate dumping margin. *Viraj Group, Ltd. v. United States,* 193 F.Supp.2d 1331, 1334 (Ct. Int'l Trade 2002) ("*Viraj II* "). Viraj again appealed, and the court found that Commerce's explanation was inadequate and again remanded. *Id.* at 1339. Commerce filed in the court a second remand redetermination further supporting its original determination; the court again found it unsatisfactory and remanded yet again. *Viraj Group, Ltd. v. United States,* 206

F.Supp.2d 1340, 1344 (Ct. Int'l Trade 2002) ("*Viraj III* ").

In its third remand redetermination, Commerce acquiesced and recalculated the dumping margin utilizing the exchange rate on the date of payment, not the November 3, 1997 date of sale. The new result was a dumping rate of zero for Viraj. However, Commerce noted that the methodology forced upon it by the court did not improve accuracy and that it in fact distorted the dumping determination. Finally, Commerce complained that the court-ordered methodology was "inconsistent with the statute." The court affirmed while not endorsing Commerce's reasoning. *Viraj IV* at 1361.

The government timely appealed to this court, and our jurisdiction is based on 28 U.S.C. § 1295(a)(5).

## DISCUSSION

■■■ We review decisions of the Court of International Trade reviewing Commerce's antidumping determinations by applying "anew" that court's standard of review set forth in 19 U.S.C. § 1516a(b)(1)(B)(i). *Ta Chen Stainless Steel Pipe, Inc. v. United States,* 298 F.3d 1330, 1335 (Fed.Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 2073, 155 L.Ed.2d 1059 (2003). Accordingly, we will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (2000). In reviewing Commerce's interpretation of an antidumping statute, we afford Commerce *Chevron* deference. *Pesquera Mares Australes Ltda. v. United States,* 266 F.3d 1372, 1382 (Fed.Cir.2001) (citing *United States v. Mead,* 533 U.S. 218, 229, 121 S.Ct. 2164, 150 L.Ed.2d 292

(2001)). Under the *Chevron* paradigm, if a statute unambiguously addresses the question at issue, we will follow that unambiguous guidance, but if Congress's intent is unascertainable or ambiguous, we must defer to the agency's interpretation, as set forth in a regulation adopted by notice-and-comment rulemaking, provided that it is reasonable in light of the overall statutory scheme. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Additionally, in recognition of Commerce's expertise in the generally complex field of antidumping investigations, we afford the same sort of deference to Commerce's antidumping determinations "even when ... there is no applicable regulation." *Pesquera*, 266 F.3d at 1379.

On appeal, the government argues that its attempt to utilize the sale-date exchange rate complied with 19 U.S.C. § 1677b–1 and 19 C.F.R. § 351.415, and that substantial evidence supports its finding that none of the exceptions to those provisions is applicable. The government further contends that the goal of achieving an accurate dumping margin is general and hortatory and does not displace Congress's specific command to use a sale-date exchange rate. Even if Commerce could ignore the language of the statute in order to achieve a more accurate dumping margin, according to the government, using the sale-date exchange rate achieves that goal, whereas the Court of International Trade's methodology based on post-sales events is distortive.

Viraj did not file a responsive brief and has not participated in this appeal.

■ A preliminary issue is whether this case presents a case or controversy that we can adjudicate. The Constitution es-

tablishes that "[t]he judicial power shall extend to cases ... [or] controversies...." U.S. Const. art. III, § 2, cl. 1. That clause has been interpreted as a prohibition against federal courts' rendering decisions in cases in which the parties bringing the case lack standing. *See Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.3d 1354, 1367 (Fed.Cir.2003) (citing *Lewis v. Casey*, 518 U.S. 343, 349 n. 1, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). We pause to consider whether this is such a case, even though no party has raised the issue. *Id.* (citing *Nat'l Org. of Women, Inc. v. Scheidler*, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) ("[T]he court sua sponte can raise the issue of standing for the first time at any stage of the litigation, including on appeal.")); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (holding that the standing requirement must be satisfied by persons seeking appellate review). We do so because this appeal comes to us in a strange posture: The government has appealed from the court's decision *affirming* the government agency's determination; in other words, the *winner* has appealed because its determination was affirmed by the trial court only on the basis of reasoning with which it disagrees.

■ When questioned at oral argument whether it has standing to appeal as the prevailing party, the government responded that it could not have appealed from one of the court's earlier decisions because the court's judgments in those earlier decisions were remands, which are nonappealable. The government's premise is correct in that the general rule is that decisions by a court remanding a matter to an agency are nonfinal and not appealable to a reviewing court. *Cabot Corp. v. Unit-*

*ed States,* 788 F.2d 1539, 1542 (Fed.Cir. 1986). However, there are certain exceptions to the general rule, and the question remains whether the government, under one of those exceptions, should have appealed from one of the court's earlier decisions, and whether its failure to do so deprives it of standing in this appeal.

■ One of the exceptions to the finality requirement is the collateral order doctrine, which permits an appeal from a non-final decision that conclusively adjudicates an issue completely separate from the merits, if that issue would be effectively unreviewable after a later final judgment. *Travelstead v. Derwinski,* 978 F.2d 1244, 1247 n. 7 (Fed.Cir.1992) (citing *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). Another exception more specific to judicial review of agency determinations is one in which (1) a court's remand decision makes an important legal determination, such as a statutory interpretation, and (2) the agency could not appeal after following the remand instructions, thereby making the legal question effectively unreviewable. *See id.* at 1248, 1249 (citing *Sullivan v. Finkelstein,* 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990)).

■ In this case, the collateral order exception was not applicable because the issue of which exchange rate to utilize in the calculation of Viraj's dumping margin was not collateral to the case. On the contrary, that issue was the central issue in the case at the time of the Court of International Trade's earlier decisions (*Viraj I* through *Viraj III*). However, the *Finkelstein* exception was arguably applicable, as both of its requirements were arguably satisfied. First, the court's holdings in *Viraj I Viraj II,* and *Viraj III* that

accuracy in dumping margin determinations is a goal that can override a specific statute directing Commerce to use a specific exchange rate is an important legal determination at least akin to statutory interpretation. Second, after eventually following the court's remand instructions in *Viraj I, Viraj II,* and *Viraj III,* the government has found itself as the prevailing party, with questionable standing now to seek our review.

The fact that the government perhaps could have appealed from one of the court's earlier decisions creates a circular dilemma. To hold that the government could have appealed sooner, we must necessarily find that it cannot bring this appeal; and to hold that it cannot bring this appeal, we must find that it could have appealed sooner. Rather than bootstrap our reasoning to reach those two conclusions, we believe that the better course is to hold that the government has sufficient standing to bring this appeal. Even though technically the prevailing party under the Court of International Trade's final decision (*Viraj IV*), the government prevailed only because it acquiesced and abandoned its original position, which it had zealously advocated, and adopted under protest a contrary position forced upon it by the court. Thus, in substance, the government is truly the non-prevailing party in this case. To hold otherwise would exalt form over substance. We therefore are satisfied that this appeal presents a case or controversy that we can address on the merits. *See British Steel PLC v. United States,* 127 F.3d 1471, 1473 n. 1 (Fed.Cir.1997) (holding that the United States had standing to appeal from a decision sustaining Commerce's remand determination because such an appeal was the government's only opportunity to challenge an earlier adverse decision in which

the Court of International Trade remanded Commerce's final determination).

■ On the merits, the issue is whether Commerce utilized the correct exchange rate when it utilized the rate on the payment date, albeit under judicial instruction, rather than the sale date. We conclude that Commerce acted unlawfully when it did so. Both a statute and a regulation provide specifically and clearly that, with exceptions not relevant to this case, Commerce is to utilize an exchange rate on the date of sale. Section 1677b–1 of Title 19 provides in pertinent part that "[i]n an antidumping proceeding under this subtitle, the administering authority shall convert foreign currencies into United States dollars using the exchange rate in effect *on the date of sale of the subject merchandise* . . . ." 19 U.S.C. § 1677b–1 (2000) (emphasis added). Commerce has interpreted that statute to mean exactly what it says when it adopted section 351.415 of Title 19 of the Code of Federal Regulations, which similarly states in pertinent part that "[i]n an antidumping proceeding, the Secretary will convert foreign currencies into United States dollars using the rate of exchange *on the date of sale of the subject merchandise.*" 19 C.F.R. § 351.415 (2003) (emphasis added).[1]

That Congress intended Commerce to utilize the sale date for currency conversions is unquestionable in the face of an unambiguous and specific statute providing exactly that. We therefore need not accord any deference to Commerce's interpretation. Even if we were to accord Commerce deference pursuant to *Chevron,*[2] we certainly would hold that its interpretation of the statute as requiring currency conversion using the sale-date exchange rate was reasonable.

■ We disagree with the Court of International Trade's view that concern over the accuracy of the dumping margin determination compels Commerce to ignore the mandate of 19 U.S.C. § 1677b–1. The court cited no statute that sets forth the goal that dumping margins be determined with accuracy. While the court did cite one of our decisions stating that accuracy is a goal when determining dumping margins, *Viraj I* at 662 (citing *NTN Bearing Corp. v. United States,* 74 F.3d 1204, 1208 (Fed.Cir.1995)), that statement is properly understood as expressing a goal within the confines of the statutes, not in derogation of a statutory provision. And while the court also cited a statement of administrative action accompanying the Uruguay Round Agreements Act, *id.* at 662–63, as expressing the goal that "the process of currency conversion . . . not distort dumping margins," that goal is merely hortatory, and, as such, cannot displace Congress's clear and specific com-

---

**1.** Although the date of sale is normally the date of invoice, Commerce may use another date that "better reflects the date on which the exporter or producer establishes the material terms of sale." 19 C.F.R. § 351.401(i) (2003). In *Viraj I* the Court of International Trade found that Commerce's use of the purchase order date as the date of sale was supported by substantial evidence and, in any event, held that Viraj had waived its argument challenging Commerce's determination of the date of sale. *Viraj I,* 162 F.Supp.2d at 662. We need not consider this issue because Commerce's decision to use the purchase order date as the date of sale has not been challenged in the appeal before us.

**2.** Because of the odd posture of this appeal, we clarify that we consider Commerce's interpretation to be its initial interpretation, not its later interpretation, which it adopted under protest, even though it was that later interpretation that was technically embodied in the decision that we are reviewing.

mand, as expressed in 19 U.S.C. § 1677b, to convert foreign currencies to dollars using the exchange rate on the sale date. *See Ad Hoc Comm. of Az–NM–TX–FL Producers of Gray Portland Cement v. United States,* 13 F.3d 398, 402–03 (Fed. Cir.1994) (holding that accuracy concerns cannot trump a specific statutory provision). We therefore need not decide whether Commerce or the court was correct in believing that its choice of exchange rate produces the most accurate result. Even if we were to agree with the court on that point, it is not a ground for Commerce to act contrary to 19 U.S.C. § 1677b–1.

## CONCLUSION

Because the court's decision was premised on a failure to give controlling effect to 19 U.S.C. § 1677b–1 in the dumping margin determination in this case, we

*REVERSE.*

## COSTS

No costs.