**Slip Op. 05-139**

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| ZHEJIANG MACHINERY IMPORT & EXPORT CORP., | : | |
| *Plaintiff*, | : | |
| v. | : | |
| UNITED STATES, | : | Court No. 02-00792 |
| *Defendant*, | : | |
| and | : | |
| THE TIMKEN COMPANY, | : | |
| *Defendant-Intervenor*. | : | |

[Plaintiff's motion to remand denied.]

Dated: October 25, 2005

Hume & Associates PC (Robert T. Hume), for Plaintiff.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Claudia Burke); Amanda L. Blaurock, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel; for Defendant.

Stewart and Stewart (Terence P. Stewart and Wesley K. Caine), for Defendant-Intervenor.

**OPINION**

RIDGWAY, Judge:

Before the Court is the Motion of Plaintiff Zhejiang Machinery Import & Export Corporation

["ZMC"] to Remand to Department of Commerce to Correct an Error and Consider Revocation of

the Antidumping Order With Respect to ZMC ("Pl.'s Motion to Remand"), which "challenges the surrogate value for steel scrap for cups, cones, and rollers used by [the U.S. Department of] Commerce in computing the dumping margin imposed against ZMC." Pl.'s Motion to Remand at 2. *See also* Memorandum in Support of Plaintiff Zhejiang Machinery Import & Export Corporation's Motion to Remand to Department of Commerce to Correct an Error and Consider Revocation of the Antidumping Order With Respect to ZMC ("Pl.'s Brief"); Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Remand ("Pl.'s Reply Brief").[1]

Both the Government and defendant-intervenor Timken vigorously oppose the Motion to Remand. *See* Defendant's Opposition to Plaintiff's Motion to Remand ("Def.'s Brief"); Response of The Timken Company, Defendant Intervenor, to 'Motion of Plaintiff Zhejiang Machinery Import & Export Corporation to Remand to Department of Commerce to Correct an Error and Consider Revocation of the Antidumping Order With Respect to ZMC' ("Def.-Int.'s Brief").

For the reasons set forth below, ZMC's Motion to Remand is denied.

---

[1]Also pending before the Court is a motion to strike ZMC's Reply Brief, filed by defendant-intervenor The Timken Company. As Timken correctly observes, a movant has no right to file a reply brief on a non-dispositive motion. *See generally* Motion of the Timken Company, Defendant Intervenor, to Strike Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Remand; USCIT Rule 7(d); *see also* Save Domestic Oil, Inc. v. United States, 24 CIT 281, 282 n.2 (2000); United States Steel Corp. v. United States, 3 CIT 170, 170-71 (1982).

However, it is not entirely clear whether ZMC's Motion to Remand should fairly be characterized as dispositive or non-dispositive. Although it is not so captioned, ZMC's motion is – in certain respects – a motion for judgment on the agency record (which is clearly a dispositive motion). *See* USCIT Rule 7(g). In any event, the ruling on ZMC's Motion to Remand does not differ depending on whether or not ZMC's Reply Brief is considered. Out of an abundance of caution, therefore, Timken's motion to strike is denied.

# I. __Background__

In this action, ZMC challenges Commerce's Final Determination, as amended, in the fourteenth administrative review of the antidumping order covering tapered roller bearings ("TRBs") and their parts from China ("TRBs XIV").[2]  The contested review covers merchandise imported between June 1, 2000 and May 31, 2001.  The sole issue specifically identified in ZMC's Complaint is Commerce's "refus[al] to use the price the Plaintiff paid its market-economy supplier with U.S. dollars for the steel the Plaintiff used to produce TRBs."  Complaint ¶ 6.[3]

By its Motion to Remand, ZMC now seeks to interject into this action a second specific issue – more than two full years after the publication of Commerce's Amended Final Results (and the release of its underlying calculations) as well as the filing of ZMC's Complaint, almost 17 months

---

[2]*See* Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Final Results of 2000-2001 Administrative Review, Partial Rescission of Review, and Determination to Revoke Order, in Part, 67 Fed. Reg. 68,990 (Nov. 14, 2002), *as amended by* Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China: Amended Final Results of 2000-2001 Administrative Review, 67 Fed. Reg. 72,147 (Dec. 4, 2002) (collectively "TRBs XIV").

[3]The Complaint also alleges broadly that "[*i*]*n addition to the issue enumerated in paragraph 6, supra,* the administrative determinations were otherwise not supported by substantial evidence on the record and were not in accordance with law."  Complaint ¶ 7 (emphasis added).  *See also* Complaint ¶ 6 (alleging that "[t]he administrative determinations herein are arbitrary and capricious, are unsupported by substantial evidence on the record, and are otherwise not in accordance with law.").

after the filing of Commerce's redetermination on remand,[4] and approximately 14 months after the completion of briefing on ZMC's Motion for Judgment on the Agency Record.

Specifically, ZMC now asserts that – in computing the dumping margin for ZMC – "Commerce used an incorrect quantity figure for Indian imports of steel scrap from the United Kingdom and thus calculated an incorrect surrogate value for the steel scrap for cups, cones, and rollers." Pl.'s Brief at 3. ZMC further contends that correction of the alleged error would yield a dumping margin below the *de minimis* level, and that – in turn – the antidumping order with respect to ZMC would be subject to revocation by Commerce, because ZMC would have established a record of at least three consecutive years of sales at not less than normal value. Pl.'s Brief at 3-7; Pl.'s Reply Brief at 2, 4-5, 7.[5]

---

[4]After ZMC filed its Motion for Judgment on the Agency Record but before the Government or Timken responded, the Government sought and was granted a voluntary remand to permit Commerce to respond for purposes of this case to concerns raised in an opinion issued in a related case – specifically, China National Machinery Import & Export v. United States, 27 CIT ____, 264 F. Supp. 2d 1229 (2003), which concerned "TRBs XIII" (the thirteenth administrative review of the same antidumping order at issue in this action). The voluntary remand ordered in this case was intended to allow the agency to provide "a more thorough explanation of its determination to use a surrogate value for steel inputs, as opposed to the price ZMC paid to a market-economy supplier for those steel inputs." *See* Def.'s Motions to Remand and Suspend Briefing Schedule; Order (June 5, 2003).

[5]Pursuant to 19 C.F.R. § 351.222(b)(2)(i), in determining whether to revoke an antidumping order, Commerce considers:

(A)      Whether one or more exporters or producers covered by the order *have sold the merchandise at not less than normal value for a period of at least three consecutive years*;

(B)      Whether, for any exporter or producer that the Secretary [of Commerce] previously has determined to have sold the subject merchandise at less than normal value, the exporter or producer agrees in writing to its immediate reinstatement in the order, as long as any exporter or producer is subject to

ZMC thus asserts that the requested remand would moot this case and obviate any need for the Court to reach the sole issue that is specifically identified in ZMC's Complaint and briefed in the parties' submissions on ZMC's Motion for Judgment on the Agency Record – ZMC's challenge to "Commerce's determination that there was 'reason to believe or suspect' that ZMC's market-economy steel prices were subsidized." Pl.'s Brief at 3, 7; Pl.'s Reply Brief at 2; Memorandum of Points and Authorities in Support of Motion of Plaintiff Zhejiang Machinery Import & Export Corp. for Judgment on the Agency Record ("Pl.'s Brief on Motion for Judgment on Agency Record") at 3.

## II. Analysis

The Government maintains that ZMC's newly-asserted challenge to the surrogate value of scrap is untimely. The Government reasons that ZMC's allegation – even if true – amounts to a claim of "ministerial error." According to the Government, ZMC was obligated to bring any such errors to Commerce's attention within five days of the agency's disclosure of the calculations

---

        the order, if the Secretary concludes that the exporter or producer, subsequent to the revocation, sold the subject merchandise at less than normal value; and

(C)     Whether the continued application of the antidumping duty order is otherwise necessary to offset dumping.

19 C.F.R. § 351.222(b)(2)(i) (2005) (emphasis added).

        ZMC asserts that, if the requested remand is granted and the newly-alleged error is corrected, it will satisfy all three of the regulatory criteria. *See* Pl.'s Brief at 5-7; Pl.'s Reply Brief at 5.

underlying its determination, in December 2002.[6]   Def.'s Brief at 2-3 (*citing* 19 C.F.R. §351.224(c)(2) (2002)).[7]  *See also* Def.-Int.'s Brief at 2 *et seq*.

Timken seconds the Government's argument on timeliness, and adds that – quite apart from the timing of ZMC's allegation – ZMC also has failed to follow proper procedure in raising the matter.  Specifically, Timken contends that "if the Court is, in principle, inclined to allow a completely fresh claim," ZMC must first seek to amend its Complaint pursuant to CIT Rule 15(a), which requires either leave of the court or the written consent of all adverse parties.  Def.-Int.'s Brief at 5.

Timken asserts that any such motion to amend the Complaint "would have to provide convincing reasons for why the Court should grant the request [to amend the Complaint], and . . . would presumably include an explanation for ZMC's significant delay."  *Id*. (footnote omitted).

---

[6]The Government's brief includes conflicting statements as to the timeliness of ZMC's new allegation.  In at least two places, the Government indicates that ZMC's allegation is "over *one year* after the deadline to submit . . . a request" for correction of a ministerial error.  *See* Def.'s Brief at 2 (emphasis added); *see also id*. at 6 (asserting that ZMC "was required to notify Commerce more than *one year* ago") (emphasis added).  Elsewhere, however, the Government asserts that ZMC was required to request correction of ministerial errors within five days of disclosure of its calculations in December 2002.  *See* Def.'s Brief at 2.  If the Government's position is that ZMC was required to request correction of ministerial errors in December 2002, then it follows that the Government actually contends that ZMC's allegation is more than *two years* late.

[7]Commerce's regulations require parties to file comments identifying any ministerial errors in the agency's final margin calculations within five days after the earlier of either the date on which Commerce releases its calculation disclosure documents or the date on which Commerce holds its disclosure meeting.  *See* 19 C.F.R. § 351.224(c)(2) (2002).

In addition to its argument that ZMC's claim of error is untimely, the Government also asserts that ZMC has proffered no "discernible evidence" of the alleged error.  *See* Def.'s Brief at 3-4.  *But see* Pl.'s Reply Brief at 5-6.  Under the circumstances, there is no need here to reach the merits of the Government's second argument.

Timken observes that – in the event that ZMC were to be allowed to amend its Complaint to include its new claim as to the surrogate value of scrap – ZMC could then file an appropriate motion for judgment on the agency record addressing that issue, which would be fully briefed by all parties to properly frame it for the Court. *Id*. Timken emphasizes that "[t]here is every reason for the Court to require this full and deliberate procedure here." *Id*. at 5-6.

Because ZMC's motion fails for other reasons, there is no need to here decide whether – as the Government alleges – the mistake alleged by ZMC constitutes "ministerial error."[8] At least at first blush, that characterization would seem to be at odds with the Government's claim (in another forum) that the alleged error is "complex" and would require "careful examination and recalculation." *See* Def.-Int.'s Brief at 6 (*quoting* Defendant's Response to Plaintiff's and Defendant-Intervenor's Comments Upon Commerce's Final Results of Redetermination Pursuant to Remand (Dec. 6, 2004) at 9, *filed in* <u>Luoyang Bearing Corp. v. United States</u>, Court No. 01-

---

[8]Timken does not take a definitive position on the alleged error's characterization as "ministerial." At some points, Timken appears to (at least implicitly) endorse that characterization. *See*, *e.g.*, Def.-Int.'s Brief at 2 (criticizing ZMC for failing to raise the alleged error "during the prescribed five-day period . . . when parties may allege ministerial errors"). But, elsewhere, Timken equivocates. *See*, *e.g.*, Def.-Int.'s Brief at 6 n.5 (observing that "the Commerce Regulations allow parties five days after disclosure of the final margin calculations to identify ministerial errors. . . . *Assuming ZMC*'s new '*error*' *is merely clerical*, it should have acted within that time.") (emphasis added).

ZMC itself seems to acquiesce in the characterization. *See*, *e.g.*, Pl.'s Reply Brief at 2 (noting its agreement that "typically an evaluation of a ministerial error would be first heard by Commerce," but arguing that – under the circumstances – the Court here has the authority "to remand this decision back to Commerce to address the ministerial mistakes made"), 3-4 (implicitly acquiescing in the Government's characterization of the error as "ministerial"), 5 (effectively adopting Commerce's characterization of the error as "ministerial").

00036).[9] Nor is there any need to deal here either with ZMC's argument that it could not have raised the alleged error before the agency because the error was discovered only after the Complaint was filed in this action, or with Timken's claim that ZMC failed to timely avail itself of "multiple opportunities to detect and allege the newly claimed 'error.'" *See* Pl.'s Reply Brief at 2; Def.-Int.'s Brief at 4.

What is dispositive here is that, even after ZMC discovered the alleged error, ZMC failed to promptly raise the issue in this action. In other words, even assuming that the alleged error is not "ministerial" and even assuming that ZMC's delay in discovering the error was excusable, there is no excuse for ZMC's delay in notifying the Court and the parties to this action of the error once it was discovered.

At least on its face, ZMC's claim of error has no small appeal. The alleged error apparently is attributable solely to Commerce. Moreover, if ZMC's allegations are true, correction of the error

---

[9]*See, e.g.*, Federal-Mogul Corp. v. United States, 18 CIT 1168, 1175-76, 872 F. Supp. 1011, 1017 (1994) (adopting Commerce's characterization of "ministerial" errors as those that are, *inter alia*, "purely clerical and *would not require further examination of the facts*") (emphasis added).

Indeed, in Luoyang, the Government summarily rejected ZMC's characterization of the alleged error as "merely clerical." *See* Defendant's Response to Plaintiff's and Defendant-Intervenor's Comments Upon Commerce's Final Results of Redetermination Pursuant to Remand (Dec. 6, 2004) at 9, *filed in* Luoyang Bearing Corp. v. United States, Court No. 01-00036 ("[T]he errors that ZMC *claims to be* merely clerical in TRBs XIV are complex and would, if asserted, require careful examination and recalculation") (emphasis added).

It seems that the Government is trying to "have its cake and eat it too." In Luoyang, the Government's interest was in *magnifying* the nature of the alleged error and the extent of the effort required to address it. In contrast, in this case, the Government seeks to invoke the "five-day rule" for correction of ministerial errors. Thus, the Government here has an interest in *downplaying* the nature of the error. (It was Timken – not the Government – that drew the attention of the Court in this case to the Government's assertion in Luoyang that the alleged error is "complex.")

would result not merely in a reduction of its dumping margin, but – rather – would render the margin *de minimis*. And the ultimate consequence of such a determination, according to ZMC, would be the revocation of the antidumping order with respect to ZMC, which would moot this case. *See generally* Pl.'s Brief at 3-7; Pl.'s Reply Brief at 2, 4-5, 7. The stakes for ZMC are potentially very high indeed. ZMC thus accuses the Government of "attempting to use a procedural argument to dismiss a substantively important matter." Pl.'s Reply Brief at 2.

To be sure, as ZMC emphasizes, Commerce is obligated to determine dumping margins "as accurately as possible." Pl.'s Reply Brief at 4 (*quoting* Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990)). Similarly, as ZMC observes, Congress has evinced "a 'legislative preference for determinations that are factually correct. . . .'" Pl.'s Brief at 4 (*quoting* Koyo Seiko Co. v. United States, 14 CIT 680, 683, 746 F. Supp. 1108, 1111 (1990)). But timeliness and finality are also important values. And, as the Court of Appeals has acknowledged, "[i]n some instances, a tension may arise between finality and correct result." NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995) (where respondent *timely* identified clerical error and requested correction at preliminary determination stage, agency was required to make correction); *see also* Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd., 334 F.3d 1284, 1292 (Fed. Cir. 2003) (recognizing the "strong interest in the finality of Commerce's decisions," and ruling that "NTN Bearing does not require correction of errors after a final determination.").[10]

---

[10]As the Supreme Court has noted:

Whenever a question concerning administrative, or judicial, reconsideration arises, two opposing policies immediately demand recognition: the desirability of finality, on the one hand, and the public interest in reaching what, ultimately, appears to be the right result on the other.

This is just such a case. Whatever procedural paradigm is used to analyze ZMC's request,

a key element of the analysis is the excusability of any delay in raising the new issue. *See*, *e.g.*, Te-

Moak Bands of Western Shoshone Indians of Nevada v. United States, 948 F.2d 1258, 1261 (Fed.

Cir. 1991), *quoting with approval* Carson v. Polley, 689 F.2d 562, 584 (5th Cir. 1982) ("[a] litigant's

failure to assert a claim as soon as he could have is properly a factor to be considered in deciding

whether to grant leave to amend").[11] And, whatever the merits of ZMC's other arguments about the

---

Civil Aeronautics Board v. Delta Air Lines, Inc., 367 U.S. 316, 321 (1961) (footnote omitted), *quoted in* NTN Bearing Corp., 74 F.3d at 1208.

[11]It is not entirely clear that the newly-alleged error was beyond the scope of ZMC's Complaint at the time that document was filed. Besides the specific challenge to Commerce's reliance on the agency's "subsidy suspicion" policy to disregard "the price the Plaintiff paid its market-economy supplier with U.S. dollars for the steel the Plaintiff used to produce TRBs," the Complaint also includes an additional "catch-all" claim which alleges that Commerce's Final Determination, as amended, is "otherwise not supported by substantial evidence on the record and . . . not in accordance with law." Complaint ¶ 7 (emphasis added). In other words, it is possible that – if ZMC had discovered the alleged error at issue here before it filed its Motion for Judgment on the Agency Record – ZMC might have briefed the alleged error in that motion, relying on the "catch-all" language in its Complaint.

In any event, as discussed above, ZMC did not discover the error until after briefing on its Motion for Judgment on the Agency Record was complete. And, as a practical matter, ZMC definitively delimited the issues in this action by its unequivocal statement in its Motion for Judgment on the Agency Record that "[t]he single issue before the Court is whether Commerce's determination that there was 'reason to believe or suspect' that ZMC's market-economy steel prices were subsidized was supported by substantial evidence and otherwise in accordance with law." *See* Pl.'s Brief on Motion for Judgment on Agency Record at 3. Moreover, all briefing on ZMC's Motion for Judgment on the Agency Record was confined to that single issue – the single issue specifically identified in the Complaint.

There is therefore no occasion here to parse the language of ZMC's Complaint to decide whether, under principles of "notice" pleading, ZMC's new allegation of error could have been found to fall within the scope of that Complaint if it had been raised earlier in this proceeding.

relative prejudice to the parties of allowing ZMC to raise the new alleged error at this (relatively advanced) stage of these proceedings, there is simply no truth to its assertion that "[a]s soon as ZMC became aware of the calculation error, it filed a motion for remand with this Court." *See* Pl.'s Reply Brief at 3 (quoting from ZMC's argument that its motion for remand is timely); *id*. at 3-5 (arguing relative prejudice to the parties). That statement is demonstrably false.

The twelfth administrative review of TRBs – "TRBs XII" – was the subject of a related action in this court, Luoyang Bearing Corp. v. United States, Court No. 01-00036. ZMC raised its allegation of error in the surrogate value of scrap in TRBs XIV (the review at issue here) in a submission it filed in Luoyang on October 27, 2004 – a full three months before it filed the instant Motion for Remand.[12] *See* Comments of Zhejiang Machinery Import & Export Corp. on Commerce Department's Final Redetermination Results Pursuant to Remand at 6-8, *filed in* Luoyang Bearing Corp. v. United States, Court No. 01-00036.

In Luoyang, ZMC was ultimately found to have a 0.00% margin. It therefore pressed to have the antidumping order against it revoked, emphasizing that – as of the period of review at issue in that case (TRBs XII) – it had established a record of three consecutive years of no dumping. Commerce nevertheless declined to revoke the order, pointing to its determination that ZMC had dumped merchandise during the period covered by TRBs XIV, the administrative review at issue in this proceeding. In response, ZMC argued in Luoyang both that it was improper for Commerce to consider the results of a subsequent administrative review, *and* that Commerce's Final

_____

[12]Obviously, if ZMC's October 27, 2004 submission in Louyang disclosed the alleged error, ZMC must have discovered the error some days, weeks or even months before that date.

Determination in TRBs XIV was inaccurate because of the very error that ZMC now seeks to raise here. *See generally* Def.'s Brief at 4-5 (summarizing the relevant history of the <u>Luoyang</u> case).

The <u>Louyang</u> Court made short work of ZMC's arguments, sustaining Commerce's right to consider the results of a subsequent review, and rejecting ZMC's attempt to collaterally attack in that proceeding (which concerned TRBs XII) the results in TRBs XIV (which are the subject of this proceeding). *See* <u>Luoyang Bearing Corp. v. United States</u>, 29 CIT ____, ____ & n.3, 358 F. Supp. 2d 1296, 1300-02 & n.3 (2005). Only *after* it failed in its attempt to use <u>Louyang</u> as an "end run" around this proceeding did ZMC file its Motion for Remand here.[13]

### III. Conclusion

In short, it is indisputable that ZMC could have raised the alleged error in the surrogate value of scrap in TRBs IV by October 2004 at the very latest. Indeed, ZMC did so – albeit in another case. ZMC's failure to promptly raise the alleged error in *this* action is fatal to the instant Motion to Remand (and would similarly doom any other motion seeking comparable relief, no matter how it were cast).

ZMC's Motion to Remand is therefore denied.

                                        _____/s/_____
                                             Delissa A. Ridgway
                                                    Judge

Dated:  October 25, 2005
             New York, New York

_____

[13]As the Government wryly notes, "[i]t can be no coincidence" that ZMC filed its Motion to Remand seeking to raise the issue of the surrogate value of scrap in this action almost immediately after the <u>Louyang</u> Court declined to consider the allegation in that case. *See* Def.'s Brief at 5 n.1.