Choe-Groves, Judge:
This case reviews an amended final determination involving pneumatic off-the-road tires from India. Plaintiffs ATC Tires Private Ltd. ("ATC") and Alliance Tire Americas, Inc. (collectively, "Plaintiffs") bring this action contesting the amended final determination in an antidumping duty investigation, in which the U.S. Department of Commerce ("Commerce" or "Department") found that certain new pneumatic off-the-road tires from India are being, or are likely to be, sold in the United States at less-than-fair value. See Certain New Pneumatic Off-the-Road Tires From India, 82 Fed. Reg. 9,056 (Dep't Commerce Feb. 2, 2017) (affirmative amended final determination of sales at less than fair value and final negative determination of critical circumstances) ("Amended Final Determination"). This matter is before the court on Plaintiffs' Rule 56.2 motion for judgment on the agency record challenging various aspects *1358 of the Department's amended final determination. See Pls.' Rule 56.2 Mot. J. Agency R., Sept. 12, 2017, ECF No. 34 ("Pls.' Mot."); see also ATC Tires Private Ltd.'s & Alliance Tire Americas, Inc.'s Mem. P. & A. Supp. Mot. J. Agency R., Sept. 12, 2017, ECF No. 34 ("Pls.' Mem."). Plaintiffs argue that Commerce's decision to treat certain ATC home market sales as not outside the ordinary course of trade, and thus include them in its dumping margin calculations, was unsupported by substantial evidence. Plaintiffs also contend that Commerce's decision to amend the final determination was not in accordance with the law. For the reasons discussed below, the court concludes that (1) Commerce's decision to consider ATC's sales as not outside the ordinary course of trade is supported by substantial evidence, and (2) Commerce's decision to amend the final determination was in accordance with the law.
PROCEDURAL HISTORY
Commerce commenced an investigation of certain new pneumatic off-the-road tires from India on February 4, 2016 at the request of Titan Tire Corporation and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (collectively, "Petitioners"). See Certain New Pneumatic Off-the-Road Tires From India and the People's Republic of China, 81 Fed. Reg. 7,073 (Dep't Commerce Feb. 10, 2016) (initiation of less-than-fair-value investigations) ("Initiation Notice"); see also Decision Memorandum for the Preliminary Determination in the Less-Than-Fair-Value Investigation of Certain New Pneumatic Off-the-Road Tires from India at 1, A-533-869, (Aug. 11, 2016), available at https://enforcement.trade.gov/frn/summary/india/2016-19867-1.pdf (last visited July 9, 2018) ("Prelim. IDM"). The period of review was January 1, 2015 to December 31, 2015. See Initiation Notice, 81 Fed. Reg. at 7,074. Commerce found it impractical to examine all producers and exporters, and opted to examine companies accounting for the largest volume of subject merchandise from India during the investigation period. See id. at 7,078 ; see also Prelim. IDM at 2. Commerce chose ATC as one of the selected companies upon request. See Prelim. IDM at 2.
Commerce published its preliminary results on August 19, 2016. See Certain New Pneumatic Off-the-Road Tires From India, 81 Fed. Reg. 55,431 (Dep't Commerce Aug. 19, 2016) (negative preliminary determination of sales at less than fair value and postponement of final determination). The Department determined preliminarily that certain new pneumatic off-the-road tires from India were not being, nor likely to be, sold at less-than-fair-value. See id. at 55,432 ; see also Prelim. IDM at 1. Commerce conducted subsequent cost and sales verifications for ATC. See Certain New Pneumatic Off-the-Road Tires from India: Issues and Decision Memorandum for the Final Negative Determination of Sales at Less-Than-Fair-Value at 3, A-533-869, (Jan. 3, 2017), available at https://enforcement.trade.gov/frn/summary/india/2017-00869-1.pdf (last visited July 9, 2018) ("Final IDM"). Petitioners and ATC submitted administrative case briefs in response to the preliminary determination, and Commerce held a closed hearing. See id.
Commerce issued its final determination on January 17, 2017, confirming a negative determination of sales at less-than-fair-value. See *1359 Certain New Pneumatic Off-the-Road Tires From India, 82 Fed. Reg. 4,848, 4,849 (Dep't Commerce Jan. 17, 2017) (final negative determination of sales at less than fair value and final determination of critical circumstances); see also Final IDM at 1. Petitioners submitted ministerial error allegations on January 10, 2017. See Petitioners' Ministerial Error Comments regarding ATC, PD 451, bar code 3535460-01 (Jan. 10, 2017). The allegations contested errors related to Commerce's application of partial adverse facts available to ATC based on unreported U.S. sample sales. See id. at 1-2. Commerce found that Petitioners' allegations challenged the Department's methodological decisions and did not constitute ministerial errors. See Memorandum from Abdelali Elouaradia re Less-Than-Fair-Value Investigation on Certain New Pneumatic Off-the-Road Tires from India: Allegation of Ministerial Errors in the Final Determination at 1-2, 4, PD 454, bar code 3539435-01 (Jan. 26, 2017). While examining the alleged errors, Commerce discovered additional errors regarding ATC's freight expenses, home market credit expenses, and U.S. indirect selling expenses. See id. at 2. Commerce issued a subsequent amended final determination, in which it made an affirmative determination of sales at less-than-fair-value and assigned ATC a final weighted-average dumping margin of 3.67 percent. See Amended Final Determination, 82 Fed. Reg. at 9,058.
ATC submitted ministerial error comments regarding the amended determination, taking issue with Commerce's decision to address the additional alleged ministerial errors that were not raised by Petitioners. See ATC Tires Private Limited's Ministerial Error Comments at 2, PD 458, bar code 3540887-01 (Feb. 3, 2017). Commerce stated that the comments did not contest ministerial errors, but rather alleged mistakes regarding the Department's chosen methodology, and thus a correction was not proper. See Memorandum from Trisha Tran re Allegation of Ministerial Errors in the Affirmative Amended Final Determination at 3-4, PD 468, bar code 3548095-01 (Mar. 2, 2017).
Plaintiffs commenced this action contesting Commerce's amended final determination on April 5, 2017, ECF No. 1, and filed its complaint on May 5, 2017, ECF No. 10. Plaintiffs filed a Rule 56.2 motion for judgment on the agency record and supporting brief. See Pls.' Mot.; Pls.' Mem. Defendant submitted a response to Plaintiffs' motion, urging the court to uphold Commerce's determination. See Def.'s Resp. Pls.' Mot. J. Agency R., Dec. 12, 2017, ECF No. 37. Plaintiffs filed a timely reply. See Reply Br. Pls. ATC Tires Private Ltd. & Alliance Tire Americas, Inc., Feb. 12, 2018, ECF No. 40 ("Pls.' Reply"). The court held oral argument on June 6, 2018. See Closed Oral Argument, June 6, 2018, ECF No. 49.
ISSUES PRESENTED
The court reviews the following two issues in this case:
1. Whether Commerce's consideration of certain home market sales as not outside the ordinary course of trade was unsupported by substantial evidence; and
2. Whether Commerce's decision to amend its final determination was contrary to law.
JURISDICTION AND STANDARD OF REVIEW
The court has jurisdiction over this matter pursuant to *1360 19 U.S.C. § 1516a(a)(2)(B)(i) (2012) and 28 U.S.C. § 1581(c), which grant the court authority to review actions contesting the final determination in an antidumping duty investigation. The court "shall hold unlawful any determination, finding or conclusion found ... to be unsupported by substantial evidence on the record, or otherwise not in accordance with law ...." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." A.L. Patterson, Inc. v. United States, 585 Fed. Appx. 778, 781-82 (Fed. Cir. 2014) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) ).
ANALYSIS
I. Commerce's Decision to Treat Certain of ATC's Home Market Sales as Not Outside the Ordinary Course of Trade
The Tariff Act of 1930, as amended, directs Commerce to conduct antidumping duty investigations and determine whether goods are being, or are likely to be, sold at less-than-fair value in the United States. See 19 U.S.C. § 1673. If Commerce finds that subject merchandise is being, or likely to be, sold at less-than-fair value, and if the U.S. International Trade Commission finds that these less-than-fair value imports materially injure or threaten to materially injure a domestic industry, Commerce issues an antidumping duty order imposing antidumping duties equivalent to "the amount by which the normal value exceeds the export price (or the constructed export price) for the merchandise." Id. Normal value is "the price at which the foreign like product is first sold ... for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price ...." Id. § 1677b(a)(1)(B)(i) (emphasis added).
Commerce must exclude home market sales that fall outside the ordinary course of trade. See id. The statute's purpose is to "avoid basing normal value on sales which are extraordinary for the market in question, particularly when the use of such sales would lead to irrational or unrepresentative results." See Statement of Administrative Action Accompanying Uruguay Round Agreements Act, H.R. Doc. 103-316, at 834 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4171 (1994) ("SAA"). "Ordinary course of trade" is defined as the "conditions and practices which, for a reasonable time prior to the exportation of subject merchandise, have been normal in the trade under consideration with respect to merchandise of the same class or kind." 19 U.S.C. § 1677(15). Commerce may deem sales outside the ordinary course of trade if they "have characteristics that are extraordinary for the market in question." 19 C.F.R. § 351.102(b)(35) ; see also NSK Ltd. v. United States, 25 CIT 583, 599, 170 F.Supp.2d 1280, 1296 (2001). Determining whether certain sales are outside the ordinary course of trade is a question of fact and must focus on the totality of the circumstances surrounding home market sales. See NSK Ltd., 25 CIT at 600, 170 F.Supp.2d at 1296. Such factors include, but are not limited to, aberrational prices, abnormally high profits, unusual terms of sale, or unusual product specifications. See 19 C.F.R. § 351.102(b)(35) ; SAA at 834.
Plaintiffs argue that Commerce's repeated focus on how the products sold *1361 did not demonstrate unique characteristics and Commerce's conclusion that the sales were not outside the ordinary course of trade were erroneous. See Pls.' Mem. 12-13. Although Commerce found repeatedly that there was "no evidence suggesting that the specifications or physical characteristics of this particular merchandise is somehow unique from the other types of tires sold in India," see Final IDM at 30, the administrative record demonstrates that Commerce also considered other factors in accordance with 19 C.F.R. § 351.102(b)(35). Commerce found, for example, that "quantities of ATC's sales fall within the range of its home market customers and were sold in commercial quantities." Final IDM at 32 (footnote omitted). Commerce did not find unusual terms of sale because "[r]ecord evidence shows that ATC renegotiated the price of the tires when the sales shifted to India." Id. at 33 (footnote omitted). Commerce found high levels of profitability, but explained that "high levels of profitability alone, for sales of merchandise in the home market, are not enough to establish that the sales are outside the ordinary course of trade." Id. at 31 (footnote omitted). Despite high levels of profitability, the overall record evidence supports Commerce's conclusion that ATC's home market sales were within the ordinary course of trade.
Plaintiffs disagree with Commerce's failure to find unusual terms of sale based on the record evidence, arguing that ATC did not renegotiate the prices when the point of delivery for the sales was changed from the [ [ ] ]. See Pls.' Mem. 13-17. Although the price changed, Plaintiffs contend that the new price essentially represents [ [ ] ]. See id. at 14-15. Plaintiffs assert that Commerce acted contrary to its statutory obligation when it included these sales because Commerce compared United States sales to [ [ ] ], as opposed to sales to India, the market in question in the antidumping duty investigation. See id. at 15. The record demonstrates that Commerce reasonably relied on evidence that ATC and its customer [ [ ] ]. See Exhibit B-17, ATC Tires Private Limited's Response to Sections B through D of the Department's Questionnaire, CD 185, bar code 3462627-16 (Apr. 21, 2016); see also Memorandum from Trisha Tran re Analysis of the Final Negative Determination Margin Calculation for ATC Tires Private Limited at 6, CD 1019, bar code 3534456-01 (Jan. 3, 2017). It was reasonable for Commerce to determine that the shift of delivery locale from the [ [ ] ], and the ensuing change in price, constituted a renegotiation of sales terms. The court concludes that Commerce's determination is supported by the record evidence.
Plaintiffs assert that the Department failed to give appropriate weight to the small quantity and limited nature of the sales. See Pls.' Mem. 17-19. Commerce recognized that "it is not unusual per se for a respondent to make a small percentage of sales to a single customer." Final IDM at 31. The Department determined that the limited quantity sold was not unusual, but rather fell "within the range of its home market customers and were sold in commercial quantities." Id. at 32 (footnote omitted). Plaintiffs conceded in their briefing that the specifications of the products sold in these sales were similar to other tires sold by ATC, and continued to rely on the circumstances to contend that the sales were unique and outside the ordinary course of trade. See Pls.' Mem. 18. The court determines that Commerce's characterization of the sales as not unusual is supported by substantial evidence.
The court concludes that Commerce sufficiently considered the record evidence *1362 and reasonably determined that ATC's sales were within the ordinary course of trade, and upholds Commerce's decision on this issue.
II. Commerce's Decision to Amend the Final Determination
19 U.S.C. § 1675(h) requires that Commerce establish a process to address ministerial errors in antidumping and countervailing duty investigations. Commerce follows specific procedures to correct ministerial errors, as enumerated in its regulation. See 19 C.F.R. § 351.224(a). The definition of "ministerial error" is "an error in addition, subtraction, or other arithmetic function, clerical error resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error which the Secretary considers ministerial." 19 C.F.R. § 351.224(f). An alleged error that is the result of a methodological decision by the Department is not a ministerial error. See QVD Food Co., Ltd. v. United States, 658 F.3d 1318, 1328 (Fed. Cir. 2011) (concluding that Plaintiff's argument was "methodological in nature" and thus did not meet the statutory definition of ministerial error).
Generally, "Commerce has an overriding obligation to calculate antidumping duty margins as accurately as possible." Husteel Co. v. United States, 39 CIT ----, ----, 77 F.Supp.3d 1286, 1300 (2015) ; see also Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990). The Court of Appeals for the Federal Circuit has recognized, furthermore, that "there is a strong interest in the finality of Commerce's decisions." Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd., 334 F.3d 1284, 1292 (Fed. Cir. 2003) (citing NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995). In directing Commerce to establish a procedure for ministerial errors by statute, "Congress established an exception to the general principle of finality." Husteel Co., 39 CIT at ----, 77 F.Supp.3d at 1300. "A tension may arise between finality and the correct result in some instances," contingent on the timing of the attempted correction. Timken U.S. Corp. v. United States, 434 F.3d 1345, 1353 (Fed. Cir. 2006). This Court has "a responsibility to 'exercise its discretion to prevent knowingly affirming a determination with errors.' " Hyundai Elecs. Indus. Co., Ltd. v. United States, 29 CIT 981, 993, 395 F.Supp.2d 1231, 1243 (2005) (quoting Torrington Co. v. United States, 21 CIT 1079, 1082, 1997 WL 589412 (1997) ).
Plaintiffs argue that the Department's decision to amend the final determination sua sponte goes against the principle of finality. See Pls.' Mem. 21-25. Plaintiffs attempt to distinguish a line of cases in which the courts have recognized Commerce's broad authority to correct ministerial errors by labeling the statements as dicta, and asks the court to limit the application of these cases to situations in which a party has previously identified ministerial errors to Commerce but did so in an untimely or procedurally-defective manner. See id. at 23-25. The court is not persuaded by Plaintiffs' argument. The Court of Appeals for the Federal Circuit has stated that both 19 U.S.C. § 1675(h) and 19 C.F.R. § 351.224"clearly permit the sua sponte correction of a ministerial error by Commerce whether or not a party has requested correction within the period specified in the regulations." Am. Signature, Inc. v. United States, 598 F.3d 816, 826 (Fed. Cir. 2010). The Department's authority to correct errors sua sponte is limited to the statutory timeframe for judicial review. "On its face the preamble to the regulation contemplates that corrections *1363 will be made before Commerce's final determination becomes final, i.e., before the time for judicial review has expired," which is typically thirty days after the final determination is published in the Federal Register. Id. Here, Commerce published its final negative determination on January 17, 2017, and published an amended affirmative determination on February 2, 2017. Because less than thirty days elapsed between the publications of the two notices, the court need not consider the principle of finality. The court concludes that Commerce properly exercised its authority to correct ministerial errors sua sponte in the final determination and acted in accordance with the law.
Plaintiffs contend further that, even if Commerce has the authority to amend the final determination sua sponte , the Department's action here is arbitrary and capricious because it failed to offer sufficient reasons for treating similar situations differently. See Pls.' Mem. 25-27; Pls.' Reply 14 ("If Commerce is given discretion to pick and choose which errors to correct, any objective application of the law with respect to late-identified errors will be at an end and Commerce will be free to choose when to correct such errors based purely on political interests."). The court finds Plaintiffs' allegations of ex parte communications, see Pls.' Mem. 20 n.8, or political interests with respect to the amended final determination to be baseless and merely speculative. See, e.g., Aramide Maatschappij V.o.F. v. United States, 19 CIT 1094, 1103, 901 F.Supp. 353, 361 (1995) (concluding that party's allegation that Commerce's correction of ministerial error was due to political pressure was "only speculation" and unsupported by evidence).
The record explains, furthermore, why Commerce decided to amend the final determination here. See Memorandum from Trisha Tran re Allegation of Ministerial Errors in the Affirmative Amended Final Determination at 3, PD 468, bar code 3548095-01 (Mar. 2, 2017) ("While analyzing Petitioners' ministerial comments, the Department discovered that it made other inadvertent errors in its calculations with respect to ATC."). When Commerce conducted its verification in this investigation, ATC submitted a revised sales database. See Memorandum from Abdelali Elouaradia re Less-Than-Fair-Value Investigation on Certain New Pneumatic Off-the-Road Tires from India: Allegation of Ministerial Errors in the Final Determination at 4, PD 454, bar code 3539435-01 (Jan. 26, 2017). Commerce "inadvertently omitted two additional freight expense fields" from this submission. Id. The omission of information from the revised sales database also affected Commerce's calculation of home market credit expenses. See id. at 4-5. The change to U.S. indirect selling expenses is related to Commerce's application of partial adverse facts available to ATC's unreported sample U.S. sales. See id. at 5. The court concludes that Commerce's decision to amend the final determination was in accordance with the law.
CONCLUSION
For the aforementioned reasons, the court concludes that:
1. Commerce's consideration of certain home market sales as within the ordinary course of trade was supported by substantial evidence; and
2. Commerce's decision to amend its final determination was in accordance with the law.
The court affirms Commerce's determination in full. Plaintiffs' Rule 56.2 motion for judgment on the agency record is denied.
Judgment will be entered accordingly.